### JUNE M. HAYES ET AL. *v.* LILLIAN M. SMITH, ADMINISTRATRIX (ESTATE OF GARY ERNEST SMITH) (12316)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, Js.

Argued February 28—decision released July 24, 1984

*Irving Spiro,* for the appellants (plaintiffs).

*Peter W. Rotella,* with whom, on the brief, was *A. A. Washton,* for the appellee (defendant).

ARTHUR H. HEALEY, J. This action to determine paternity was brought by verified petition dated February 26, 1982, pursuant to General Statutes § 46b-160.[1] The plaintiff, June M. Hayes, alleged that she had been a single woman for more than one year prior to the action; that on January 28, 1982, she had given birth to a child, Perry Allyn Hayes, who was conceived on or about April 17, 1981, fathered by Gary Ernest Smith, who has since died; and that on December 15, 1981, Lillian M. Smith qualified as administratrix of his estate in the Probate Court for the district of New London.

The administratrix filed a motion to dismiss the action pursuant to Practice Book §§ 142 and 143 (1), main-

[1] General Statutes § 46b-160, entitled "Petition by mother or expectant mother. Venue. Continuance of case. Evidence," provides inter alia: "Proceedings to establish paternity of a child born or conceived out of lawful wedlock, including one born to, or conceived by, a married woman but begotten by a man other than her husband, shall be instituted by a verified petition of the mother or expectant mother, with summons and order, filed in the superior court for the geographical area in which either she or the putative father resides. For trial purposes, jurors shall be selected from the judicial district in which such geographical area is located. In cases involving public assistance recipients the petition shall also be served upon the attorney general who shall be and remain a party to any paternity proceeding and to any proceedings after judgment in such action. Upon the filing of such petition, said court or any judge assigned to said court shall cause a summons, signed by him or by the clerk or assistant clerk of said court, to be issued, requiring the putative father to appear in court at a time and place named therein to show cause, if any he has, why the prayer of such petition should not be granted. Such petition, summons and order shall be in a form approved by the judges of the superior court. In the case of a child or expectant mother being supported wholly or in part by the state, service of such petition may be made by any investigator employed by the department of human resources or the department of income maintenance. No such petition shall be brought after three years from the birth of such child, or after three years from cessation of contribution toward support of the child by the putative father, whichever is later; provided the provisions of section 52-590 shall be applicable to this section. If such putative father fails to appear in court at such time and place, the court may hear the petitioner and enter such judgment and order as the facts may warrant. Such court may order continuance of such hearing; and if such mother or expectant mother continues constant in her accusation, it shall be evidence that the respondent is the father of such child."

taining that the Superior Court lacked jurisdiction because the paternity action was brought against the defendant as the administratrix of the alleged father's estate and, since a paternity action does not survive the death of the alleged father, it cannot lie against the personal representative of his estate. Shortly thereafter, the plaintiff sought to amend her prayers for relief to·seek only an establishment of paternity and the issuance of "such orders as will charge the Estate with the legal rights of [the] child . . . ." The court granted the motion to dismiss and this appeal followed.[2]

In its decision on the motion to dismiss, the trial court described the issues to be whether Connecticut statutes require a determination of paternity during the lifetime of the putative father, and if such a determination is required, whether that requirement passes constitutional muster. In concluding affirmatively in each instance, it found the language of § 46b-160 plain and unambiguous in providing that a summons be issued to the "putative father" to appear in court to show cause why the prayer of the plaintiff's petition should not be granted. The court decided that because this statute was in derogation of the common law, it was therefore required to be strictly construed. It also noted that § 46b-160 contained no express provision for survival of the action after the death of the putative father. The trial court pointed out that courts in other jurisdictions have held that where the putative father dies before a paternity action is brought, the action does not survive even where there is a general statute providing for the survival of actions. In that regard, it observed that our general survival of actions statute; General Statutes § 52-599;[3] contained no clause

---

[2] At the time the court granted the defendant's motion to dismiss, it said: "The motion to dismiss is granted, and, if necessary, the request to amend, together with the motion to add a plaintiff, is denied."

[3] General Statutes § 52-599 entitled "Survival of actions and causes of actions," provides: "(a) A cause or right of action shall not be lost or des-

that could arguably "save" this action. The trial court stated that some other courts have held that a general statute for survival of actions does not affect a statutory right of action because the saving clause that permits survival must be contained in the statute itself. Eschewing what it regarded as the plaintiff's invitation to legislate judicially, it found that under Connecticut law, "an action to determine paternity does not survive the death of the putative father and that such an action may not be maintained against his estate."

The plaintiff claimed below that it was necessary to construe § 46b-160 to allow commencement of the paternity suit against the putative father's estate in order for her to establish paternity under § 45-274 (b)[4] and that to construe the statute otherwise denied her child equal protection of the laws. In rejecting this claim, the trial court referred to the recent United States Supreme Court cases of *Lalli* v. *Lalli,* 439 U.S. 259, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978), and *Trimble* v. *Gordon,* 430 U.S. 762, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977), and concluded that the Connecticut statu-

troyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person.

"(b) A civil action or proceeding shall not abate by reason of the death of any party thereto, but may be continued by or against the executor or administrator of the decedent. If a party plaintiff dies, his executor or administrator may enter within six months thereafter and prosecute the action in the same manner as his testator or intestate might have done if he had lived. If a party defendant dies, the plaintiff, within one year thereafter, may apply to the court in which the action is pending for an order to substitute the decedent's executor or administrator in the place of the decedent, and, upon due service and return of the order, the action may proceed.

"(c) The provisions of this section shall not apply: (1) To any cause or right of action or to any civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto, (2) to any civil action or proceeding whose prosecution or defense depends upon the continued existence of the persons who are plaintiffs or defendants, or (3) to any civil action upon a penal statute."

[4] General Statutes § 45-274 entitled "Distribution to spouse and children. Children born out of wedlock may inherit," provides:

"(a) After distribution has been made to the husband or wife of the

tory requirement that paternity actions be commenced before the death of the putative father passed constitutional muster because the statutory classification was substantially related to legitimate state interests. The court determined that such state purposes included "its interest in the reliability of the fact-finding process, in preventing spurious claims and in preventing the decedents' estates from being placed at an unreasonable disadvantage in defending paternity claims." We find no error.

On appeal, the plaintiff claims that the "only method" of establishing paternity by a court of competent jurisdiction is that "mandated" by § 46b-160.[5] The plaintiff seems to argue that while the first part of § 46b-160, which requires that a paternity action must be insti-

---

intestate of such portion or share of the estate of the intestate as such husband or wife is entitled to by law, all the residue of the real and personal estate shall be distributed in equal proportions, according to its value at the time of distribution, among the children and the legal representatives of any of them who may be dead, except that children or other descendants who receive estate by advancement of the intestate in his lifetime shall themselves or their representatives have only so much of the estate as will, together with such advancement, make their share equal to what they would have been entitled to receive had no such advancement been made.

"(b) (1) Children born before marriage whose parents afterwards intermarry shall be deemed legitimate and inherit equally with other children. (2) A child born out of wedlock shall inherit from (A) his or her mother and (B) his or her father, provided such father (i) has been adjudicated the father of such child by a court of competent jurisdiction, or (ii) has acknowledged under oath in writing to be the father of such child.

"(c) For the purposes of this section (1) issue shall include children born out of wedlock and the issue of such children provided both the child born out of wedlock and any of such issue qualify for inheritance under this section; (2) legal representatives shall include legal representatives of children born out of wedlock, provided both the child born out of wedlock through whom such legal representatives inherit and the legal representatives qualify for inheritance under this section."

In 1978, Public Acts 1978, No. 78-199, § 1 designated the former first sentence as subsection (a), designated the former second sentence as subsection (b) (1) and added subsection (b) (2) and subsection (c).

[5] In her brief, the plaintiff specifically states that, despite the requirement of a court of probate to ascertain heirs under General Statutes § 45-272 (a), that court is *not* a proper forum "since either party plaintiff

tuted by verified petition, is substantive, the balance of that statute is procedural and will not bar the action in this case. She maintains that by virtue of the 1978 amendment to § 45-274[6] "the means of establishing paternity have been enlarged to include proceedings in the Estate of the deceased [alleged] father that are now IN REM . . ." and not in personam proceedings. She asserts that her paternity claim in this case "impinge[d] upon [a] 'court of competent jurisdiction' " under § 45-274 (b). Additionally, she claims that the issue of paternity survives the putative father's death and does not come within the exception in the survival statute, i.e., § 52-599. To hold that the death of the putative father bars the paternity action would, she asserts, deprive the child of the right of establishing paternity through this mother, thus contravening the child's right to equal protection of the laws and due process of law under both the United States and Connecticut constitutions.

In turning to the plaintiff's claims on statutory construction, we recognize certain settled tenets of statutory construction. "A cardinal rule of statutory construction is to construe statutes in a manner which gives effect to the apparent intention of the legislature. *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980) (citations omitted). 'It has often been said that the legislative intent is

___

or defendant have a right to a jury trial and jury trials are not held in probate court matters." (Emphasis added.) Because of this, she continues, we must turn to § 46b-160 "as being the only method of *instituting* the action to establish paternity." (Emphasis added.)

General Statutes § 45-272 (a) provides: "COURT TO ASCERTAIN HEIRS AND DISTRIBUTEES. The court of probate shall ascertain the heirs and distributees of each intestate estate, and the heirs and disbributees of, and their respective shares in, each testate estate so far as the will may leave the same indefinite and necessary to be defined or so far as it is necessary to give effect to an agreement made in accordance with the provisions of section 45-272a."

[6] See footnote 4, supra.

to be found not in what the legislature meant to say, but in the meaning of what it did say. *Wiegand* v. *Heffernan,* 170 Conn. 567, 581, 368 A.2d 103 (1976); *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975); *Sillman* v. *Sillman,* 168 Conn. 144, 148, 358 A.2d 150 (1975).' *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980). Where the language used is clear and unambiguous, we will not speculate as to some supposed intention. *Robinson* v. *Unemployment Security Board of Review,* supra. . . . Further, in construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous. *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978); *Catino* v. *Board of Education,* 174 Conn. 414, 418, 389 A.2d 754 (1978)." *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co., Inc.,* 193 Conn. 208, 231–32, 477 A.2d 988 (1984). "[I]n the absence of ambiguity, courts cannot read into statutes, by construction, provisions which are not clearly stated; *Point O'Woods Assn., Inc.* v. *Zoning Board of Appeals,* 178 Conn. 364, 366, 423 A.2d 90 (1979); but must ascribe plain and ordinary meaning to the language used. *Mazur* v. *Blum,* 184 Conn. 116, 118, 441 A.2d 65 (1981); *Jones* v. *Civil Service Commission,* 175 Conn. 504, 509, 400 A.2d 721 (1978). A legislative act must be read as a whole and 'construed to give effect and to harmonize all of its parts.' *Eighth Utilities District* v. *Manchester,* 176 Conn. 43, 50, 404 A.2d 898 (1978)." *Finkenstein* v. *Administrator,* 192 Conn. 104, 110, 470 A.2d 1196 (1984).

An examination of § 46b-160 demonstrates that the paternity action must be instituted by service of a verified petition, summons and order upon the putative father himself. This statute provides in part: "Proceedings to establish paternity of a child born or conceived out of lawful wedlock, including one born to, or con-

ceived by, a married woman but begotten by a man other than her husband, *shall* be instituted by a verified petition of the mother or expectant mother, with summons and order, filed in the superior court for the geographical area in which either she or the putative father resides. . . . Upon the filing of such petition, said court or any judge assigned to said court *shall* cause a summons, signed by him or by the clerk or assistant clerk of said court, to be issued, requiring the putative father to appear in court at a time and place named therein to show cause, if any he has, why the prayer of such petition should not be granted." (Emphasis added.) The word "shall" refers not only to the method of instituting the action, but also to the summons to be served on the putative father concerning his required court appearance to answer the petition. That the ordinary mandatory meaning to be given to the term "shall" was intended is amply supported by the fact that the term "may," which is ordinarily directory, is also used several times in the same statute. The use of such terms, which "evidences [an] affirmative selectivity of terms with [the] specific intent to be distinctive in meaning . . . must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings." *Jones* v. *Civil Service Commission,* 175 Conn. 504, 509, 400 A.2d 721 (1978), and cases there cited.

Moreover, § 46b-160 provides that the verified petition which may be brought by either "the mother or expectant mother" shall be filed in the Superior Court for the geographical area in which either "she or the putative father *resides.*" (Emphasis added.) The mandate that the putative father shall be summoned *"to appear"* to answer the petition further indicates the legislative intent that he be alive. There is nothing in this statute or, for that matter, in the statutory scheme in which it appears, which is expressive of any other

legislative intent. Indeed, § 46b-160 appears in chapter 815y of the General Statutes which is entitled "Paternity Matters," and certain other statutes in that chapter demonstrate the requirement that the putative father be *in esse* when the paternity suit is instituted. Section 46b-161 concerns the procedure where the petition is brought prior to the birth of the child and refers to a hearing to determine probable cause. If probable cause is found, this statute provides that "the court shall order the *defendant* to become bound to the complainant, with surety. . . ." Section 46b-164 provides that "the trial of the question of fact as to the guilt or innocence of the *defendant* shall, at the desire of either party, be by a jury of six." (Emphasis added.) Section 46b-166 provides that a putative father "shall not be excused from testifying because *his* evidence may tend to disgrace or incriminate *him*" and grants him immunity from prosecution for any criminal act "about which (1) *he* testifies in connection with such proceedings or (2) *he* makes any statement prior to such proceedings with respect to the issue of paternity." (Emphasis added.) We also note that § 46b-162 permits the state or any town interested in the support of a child born out of wedlock to "institute such [paternity] proceedings *against the person accused of begetting the child* . . ." if the mother neglects to do so. (Emphasis added.)

Although the plaintiff can point to nothing in the statutory scheme of § 46b-160 that belies the plain legislative intent that § 46b-160 requires that a paternity action must be instituted during the lifetime of the putative father, she seems to argue, recognizing that the action must be instituted by verified petition, that the balance of the statute is procedural and not substantive. The plaintiff claims that while the "procedural method" might be "flawed" by the death of the putative father, that will not destroy the action. To support

this claim, she argues that the 1978 amendment to § 45-274[7] "enlarged" the means of establishing paternity to include in rem proceedings against the estate of the deceased "father" and that the issue of paternity does not fall within the exception to the general survival statute in § 52-599. We do not agree.

We first point out that because § 46b-160 is in derogation of the common law, it is to be strictly construed. *Edmundson* v. *Rivera,* 169 Conn. 630, 633, 363 A.2d 1031 (1975).[8] Recognizing that § 46b-160 contains no saving clause, the plaintiff, nevertheless, claims that the action survives even though it was not instituted during the lifetime of the putative father. In doing so she depends upon §§ 52-599 and 45-274 of the General Statutes. Neither of these statutes, alone or in combination, establishes her claim of survival.

"At common law all causes of action by or against a person terminated and abated upon such person's death. Survival of causes of action arise only through the medium of so-called 'survival statutes.' " *Johnson* v. *Peoples First National Bank & Trust Co.,* 394 Pa. 116, 123, 145 A.2d 716 (1958); see *Freeman* v. *Giacomo Costa Fu Andrea,* 282 F. Sup. 525, 526 (E.D. Pa. 1968). Section 52-599, which is entitled "Survival of actions and causes of actions," provides, inter alia: "(a) A cause or right of action shall not be lost or destroyed by the

---

[7] See footnote 4, supra.

[8] Such an action, of course, did not survive the putative father at common law. "In the absence of a statutory provision a bastardy proceeding does not survive against the personal representative of an alleged father." (Citations omitted.) *Carlson* v. *Bartels,* 143 Neb. 680, 684, 10 N.W.2d 671 (1943). "Where a remedy is the creature of statute, such remedy may be enforced only in the manner prescribed by that statute. *Neuchiller* v. *Neuchiller,* 351 Ill. App. 304, 114 N.E.2d 900 [1953]." *Toms* v. *Lohrentz,* 37 Ill. App. 2d 414, 417, 185 N.E.2d 708 (1962) (action under Illinois Paternity Act); see *Pittsburgh Plate Glass Co.* v. *Dahm,* 159 Conn. 563, 565, 271 A.2d 55 (1970). "Paternity proceedings must be conducted in the manner prescribed by the legislature." *In re Estate of Blumreich,* 84 Wis. 2d 545, 553, 267 N.W.2d 870 (1978).

death of any person, but shall survive in favor of or against the executor or administrator of the deceased person. . . . (c) The provisions of this section shall not apply . . . (2) to any civil action or proceeding whose prosecution or defense depends upon the continued existence of the persons who are plaintiffs or defendants. . . ." " 'A cause of action is that single group of facts which is claimed to have brought about an unlawful injury to the plaintiff and which entitles the plaintiff to relief. *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 197, 91 A.2d 778 [1952]; *Veits* v. *Hartford,* 134 Conn. 428, 434, 58 A.2d 389 [1948]. "A right of action at law arises from the existence of a primary right in the plaintiff, and an invasion of that right by some delict on the part of the defendant. The facts which establish the existence of that right and that delict constitute the cause of action." *Pavelka* v. *St. Albert Society,* 82 Conn. 146, 147, 72 A. 725 [1909]. . . .' " *Giglio* v. *Connecticut Light & Power Co.,* 180 Conn. 230, 239, 429 A.2d 486 (1980), quoting *Gallo* v. *G. Fox & Co.,* 148 Conn. 327, 330, 170 A.2d 724 (1961). "The phrase 'right of action' includes the right to commence and maintain an action." *Pickett* v. *Ruickoldt,* 91 Conn. 680, 683, 101 A. 82 (1917).

The plaintiff seeks only the determination of "paternity" which is defined as "the quality or state of being a father." Webster, Third New International Dictionary. "A paternity proceeding is a proceeding instituted to determine a relationship or status between individuals and, as such, it is purely personal to the parties." *In the Matter of Mary Ellen C.* v. *Joseph William C.,* 79 App. Div. 2d 1024, 1025, 435 N.Y.S.2d 738 (1981). Section 52-599 is also in derogation of the common law. The paternity proceeding authorized by § 46b-160, which was not instituted prior to the death of the putative father, does not survive, as claimed, under § 52-599.

In a number of other jurisdictions where a general statute for survival of actions was relied on as barring abatement of an action under a bastardy statute by reason of the death of a putative father, it has been held that such a statute did not have that effect but, rather, that for such an action to survive his death, it was necessary that there be legislation so providing. See, e.g., *Carpenter* v. *Sylvester,* 267 So. 2d 370, 372 (Fla. App. 1972). Courts are in substantial agreement that, absent a statute expressly providing for the survival of a cause of action or of an action to establish paternity and support of an illegitimate child, no right of action survives the death of the putative father. See *Carpenter* v. *Sylvester,* supra; *Toms* v. *Lohrentz,* 37 Ill. App. 2d 414, 417–18, 185 N.E.2d 708 (1962); *K. K.* v. *Estate of M. F.,* 145 N.J. Super. 250, 253–56, 367 A.2d 466 (1976); *In the Matter of Mary Ellen C.* v. *Joseph William C.,* supra; see generally, note, 58 A.L.R.3d 188; see *Gross* v. *VanLerberg,* 231 Kan. 401, 403, 646 P.2d 471 (1982).

Further support for our determination that the paternity proceeding does not survive is found in our survival statute itself. The nature of this paternity action or proceeding is one in which, at the very least, the "defense depends upon the continued existence of the . . . defendant[s] . . . ." General Statutes § 52-599 (c) (2). We are aware that the plaintiff seeks only the determination of paternity, but another statute bearing on her claim of survival is § 46b-171 which provides that after a "defendant is found guilty," the court may impose certain financial orders, together with a surety bond to perform such orders, and his failure to comply with any of these may result in his incarceration until he complies. If, as claimed, a paternity proceeding could be instituted against the administratrix of the putative father's estate, "[t]he incongruities that would beset such a proceeding are obvious

enough. It would be a strange sight to see an [administratrix] arrested, required to give a bond, be put on trial, and perhaps imprisoned for an act of bastardy committed by the party officially represented by [her]." *McKenzie* v. *Lombard,* 85 Me. 224, 224–25, 27 A. 110 (1892). It is also apparent that because of the privacy surrounding the circumstances giving rise to the charge of paternity, the defendant's presence to defend properly is quite necessary. Because the question of paternity is one of fact and not of law; *Holub* v. *King,* 22 Conn. Sup. 118, 120, 163 A.2d 800 (1960); the decedent's continued availability would be a substantial factor in contributing to the reliability of the factfinding process on this question. See *Lalli* v. *Lalli,* supra, 271.

The final branch of the plaintiff's claim of survival concerns § 45-274 (b) (2) which, she maintains, "enlarged" the means of establishing paternity to include in rem proceedings against the decedent's estate. This claim is without merit. She is the party who has invoked § 46b-160 as the predicate for this paternity proceeding to determine the relationship between individuals which is "purely personal to the parties." *In the Matter of Mary Ellen C.* v. *Joseph William C.,* supra. "A proceeding in rem is essentially a proceeding to determine the right in specific property, against all the world, equally binding on everyone." 1 Am. Jur. 2d, Actions § 40. Conceptually, "in rem" jurisdiction is based upon a court's control over a "res" rather than a defendant as a person. Unlike a valid marriage which creates a legal status between the parties and has been said to be the marital res capable of furnishing the basis for jurisdiction of a court, the birth of a child out of wedlock does not, per se, create any legal status between the child and a putative father. Generally, the legitimatization of such a child vis-a-vis his "father" is a matter of statute. The plaintiff, therefore, assumes a false premise when she argues that the jurisdiction of

the court of her "in rem claim" can be predicated upon the existence of a status or res which she expressly concedes is presently nonexistent because she is bringing this action solely to establish that very status or res, i.e., the paternity of the child. See *Mazzei* v. *Cantales,* 142 Conn. 173, 178–79, 112 A.2d 205 (1955).

While it is true that the 1978 amendment to § 45-274 "enlarged" the ability of an illegitimate child to inherit from his or her father,[9] the amendment speaks only to the right to inherit *after* adjudication or acknowledgement of paternity. It does not at all address the means of *establishing* paternity.[10] We reject the claimed linkage of both §§ 52-599 and 45-274 (b) (2) to § 46b-160 that is argued as the jurisdictional basis for this paternity action. Although we are sensitive to what the plaintiff is endeavoring to accomplish, the result which she asks us to reach would require this court to legislate. This we cannot do. Other jurisdictions have also declined to do so. See, e.g., *Carpenter* v. *Sylvester,* supra, 372; *Carlson* v. *Bartels,* 143 Neb. 680, 686, 10 N.W.2d 671 (1943).

With this construction of the statutory scheme for the establishment of paternity in mind, we now turn to the plaintiff's constitutional claims. The plaintiff also appears to claim, in effect, that a construction of this statutory scheme to prevent her institution of a paternity action prevents her from establishing her child's ability to inherit under § 45-274 (b) (2) from the decedent's estate. She argues that the death of the putative father cannot be used to defeat the right of action

---

[9] See footnote 4, supra.

[10] The legislative history of the 1978 amendment to General Statutes § 45-274 indicates that that amendment was not intended to apply to the situation where the paternity action authorized by General Statutes § 46b-160 was not instituted during the life of the putative father. See comments of Judge Glenn E. Knierim, Probate Court Administrator, Hearings Before Joint Standing Committee on the Judiciary, Pt.3, 1978 Sess., pp. 1325–26.

to establish paternity as granted by statute and that to do so now when our statutes give a child born out of wedlock "equal rights with legitimate children to share in the estate of their deceased father" deprives such children of equal protection of the laws and due process of law under the United States and Connecticut constitutions.[11] We do not agree.[12]

At the outset, we must note that absent from the plaintiff's brief is any reference to two significant United States Supreme Court decisions. They are *Lalli* v. *Lalli,* supra, and *Trimble* v. *Gordon,* supra.[13] In *Trimble,* the court struck down on equal protection grounds an Illinois statute that limited an illegitimate child's right to inherit from her natural father in an intestacy to a situation where the natural parents had married *and* the father had acknowledged the child as his.[14] In *Lalli,* the court upheld against an equal protection challenge a New York statute that limited an

[11] In this case we construe the equal protection and due process provisions of the United States and Connecticut constitutions to have the same meaning and limitations. See *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 314, 417 A.2d 343 (1979), and cases there cited.

[12] We need not discuss the plaintiff's due process claim. The plaintiff has merely claimed a violation of due process and referred to article first, § 10 of the Connecticut constitution. She has not developed this claim at all either in her brief or in oral argument before us. "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. *Cheney* v. *Strasburger,* 168 Conn. 135, 142, 357 A.2d 905 (1975); Maltbie, Conn. App. Proc. § 327; see *Hartford National Bank & Trust Co.* v. *Tucker,* 178 Conn. 472, 475, 423 A.2d 141 (1979). This also applies to constitutional claims. *Mazur* v. *Blum,* 184 Conn. 116, 120, 441 A.2d 65 (1981); *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 108–109, 291 A.2d 721 (1971)." *Rodriguez* v. *Mallory Battery Co.,* 188 Conn. 145, 149, 448 A.2d 829 (1982).

[13] Both the trial court's memorandum of decision and the defendant's brief discussed both of these cases. The plaintiff also cites no United States Supreme Court decisions that postdate either *Trimble* or *Lalli.*

[14] *Trimble* points out that under Illinois law, legitimate children are allowed to inherit by intestate succession from both their mothers and their fathers. Under the Illinois statute challenged in *Trimble,* an illegitimate

illegitimate child's right to inherit from her natural father by intestacy to where " 'a court of competent jurisdiction has, *during the lifetime* of the father, made an order of filiation declaring paternity in a proceeding instituted during the pregnancy of the mother or within two years from the birth of the child.' " (Emphasis added.) *Lalli* v. *Lalli,* supra, 261–62.

In *Lalli,* the court observed that it had reaffirmed what it said in *Trimble,* supra, 767, that while "classifications based on illegitimacy are not subject to 'strict scrutiny,' they nevertheless are invalid [on equal protection grounds] under the Fourteenth Amendment if they are not substantially related to permissible state interests." *Lalli* v. *Lalli,* supra, 265. The New York statute in *Lalli,* like § 45-274 (b) (2), renders the marital status of the "parents" irrelevant. The *Lalli* court said that "[t]he single requirement [under the New York statute] at issue here is an evidentiary one – that the paternity of the father be declared in a judicial proceeding sometime before his death." *Lalli* v. *Lalli,* supra, 267.

The primary state objective of the challenged aspect[15] of the statute in *Lalli* was to provide for the just and orderly disposition of property at death which, the court acknowledged, was an area "with which the States have an interest of considerable magnitude." *Lalli* v.

---

child inherited, inter alia, from his or her mother. The portion attacked provided that "[a] child who was illegitimate whose parents inter-marry and who is acknowledged by the father as the father's child is legitimate." (Emphasis added.) *Trimble* v. *Gordon,* 430 U.S. 762, 764–65, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977).

[15] The New York Court of Appeals declined to rule on certain aspects of the challenged statute, including the constitutionality of the two year limitation, and the United States Supreme Court, therefore, did not discuss that. The court specifically said: "Our decision today therefore sustains § 4-1.2 [the statute involved] under the Equal Protection Clause only with respect to its requirement that a judicial order of filiation be issued during the lifetime of the father of an illegitimate child." *Lalli* v. *Lalli,* 439 U.S. 259, 268 n.6, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978).

*Lalli,* supra, 268. That interest, it recognized, was "directly implicated in paternal inheritance by illegitimate children because of the peculiar problems of proof that are involved" whereas "[e]stablishing maternity is seldom difficult." *Lalli* v. *Lalli,* supra, 268. Thus, problems arise, said the court, that "counsel against treating illegitimate children identically to all other heirs of an intestate father." *Lalli* v. *Lalli,* supra, 269.

After alluding to problems concerning the administration of estates in this context such as spurious claims that might be difficult to expose, harassing litigation, the need to facilitate administration of estates and the like, the *Lalli* court concluded that the state's interests were "substantial." In finding no equal protection violation, the court considered the means adopted by New York, embodied in its statute, to further its substantial interests. The court opined that the placing of paternity disputes in a judicial forum during the putative father's lifetime enhanced "accuracy" in resolving such disputes. Indeed, it referred with approval to the observations of the New York Court of Appeals that "the 'availability [of the putative father] should be a substantial factor contributing to the reliability of the fact-finding process.' " *Lalli* v. *Lalli,* supra, 271. It also said that requiring that the order of paternity be issued during the putative father's lifetime permits a man to defend his reputation against "unjust accusations in paternity claims[16] . . ." and, further, that the administration of estates would be facilitated and "[f]raudulent assertions of paternity will be much less likely to succeed, or even to arise, where the proof is put before a court of law at a time when the putative father is available to respond, rather than first brought to light when the distribution of the assets of an estate is in the offing." *Lalli* v. *Lalli,* supra, 271–72. Although

---

[16] This was a "secondary purpose" of the New York statute. *Lalli* v. *Lalli,* 439 U.S. 259, 271, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978).

recognizing that some illegitimate children could establish the necessary relationship without seriously disrupting estate administration, the court brushed aside the view that the statute excluded significant categories of illegitimate children who could be allowed to inherit without jeopardizing the orderly settlement of their intestate fathers' estates. In doing so, the court admitted that few statutory classifications are "entirely free from the criticism that they sometimes produce inequitable results." *Lalli* v. *Lalli,* supra, 273. Pointedly, it noted that the equal protection inquiry "does not focus on the abstract 'fairness' of a state law, but on whether the statute's relation to the state interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the Fourteenth Amendment." Id. In upholding the New York statute, the *Lalli* court said of it that "[i]nheritance is barred *only* where there has been a failure to secure evidence of paternity *during the father's lifetime in the manner prescribed by the State*" and that the statute did not "inevitably disqualif[y] an unnecessarily large number of children born out of wedlock." (Emphasis added.) Id. It concluded that the statutory requirement imposed on illegitimate children was "substantially related to the important state interests the statute is intended to promote." *Lalli* v. *Lalli,* supra, 275–76.

Our in-depth discussion of *Lalli* brings into focus the striking similarities of the plaintiff's equal protection constitutional claims. Parsed to basics, § 46b-160 requires that the paternity proceeding be instituted during the lifetime of the putative father and § 45-274 (b) (2) permits inheritance where paternity has been adjudicated or acknowledged as that statute sets out. The substantial state interests effectuated by the Connecticut statutory framework, which we find are similar to those explicated in *Lalli,* cause us to reject the plaintiff's equal protection claims.

There is no error.

In this opinion SPEZIALE, C. J., PETERS and PARSKEY, Js., concurred.

SHEA, J., concurring. "A cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or administrator of the deceased person." General Statutes § 52-599 (a). Although this survival statute is in derogation of the common law, it is also remedial and should be interpreted broadly to achieve the purposes intended by the legislature. The only exceptions to the broad sweep of § 52-599 (a) are those set forth in § 52-599 (c): "(1) . . . any cause or right of action or . . . any civil action or proceeding the purpose or object of which is defeated or rendered useless by the death of any party thereto, (2) . . . any civil action or proceeding whose prosecution or defense depends upon the continued existence of the persons who are plaintiffs or defendants, or (3) . . . any civil action upon a penal statute."

The majority opinion holds that a paternity action falls within the second of these exceptions and assumes that such an action "depends upon the continued existence of the persons who are plaintiffs or defendants," because of the references to the "putative father" in § 46b-160 and also the difficulty of defending such a suit without having the putative father available. The references to the father in § 46b-160 do not preclude its application to the representative of his estate when he is deceased, nor are the problems of defending a suit against an estate based upon a transaction with the decedent peculiar to paternity suits.

I am convinced, nevertheless, that the legislature in enacting General Statutes § 45-274 (b) (2), allowing illegitimate children to inherit from their fathers,

intended to bar paternity actions commenced after the father's death as a basis for establishing the child's claim. This 1978 amendment limits such right of inheritance to a child born out of wedlock whose father "(i) has been adjudicated the father of such child by a court of competent jurisdiction, or (ii) has acknowledged under oath in writing to be the father of such child." As the majority opinion notes,[1] the legislative history of this amendment indicates that the adjudication of paternity would have to be made in an action commenced during the life of the putative father.

Since the only purpose of this paternity action is to establish the right of the child to inherit from the estate of his father, an objective which conflicts with the intention of § 45-274 (b) (2) as indicated by its legislative history, the action falls within the exception to survival created by General Statutes § 52-599 (c): "any cause or right of action . . . the purpose or object of which is defeated or rendered useless . . . ." Accordingly, I concur in the result.