RAYMOND W. GANIM, GUARDIAN AD LITEM FOR
LESLIE NICOLE MARTIN *v.* PAT ROBERTS, JR.,
ADMINISTRATOR (ESTATE OF PAT ROBERTS III)
(12937)

PETERS, C. J., HEALEY, CALLAHAN, SPALLONE and SPEAR, Js.

Argued May 5—decision released August 11, 1987

*William A. Pelletreau,* with whom, on the brief, was
*Joseph C. Ventricelli,* for the appellant (defendant).

*David J. Laudano,* for the appellee (plaintiff).

SPALLONE, J. This case concerns the inheritance
rights of a putative father in the estate of a deceased
child. The dispositive issue is whether a putative father
may establish his paternity under General Statutes
§ 46b-172a after the child dies. Because we conclude

that § 46b-172a, when read in its entirety, contemplates that an adjudication of paternity take place during the lifetime of the child in question, we hold that a putative father cannot rely on this statute to establish paternity after the death of the child. We further hold that such an interpretation of § 46b-172a does not impermissibly discriminate against unwed fathers in violation of the equal protection clauses of the federal or state constitutions. We thus hold that, under our present statutory scheme, a man claiming to be the father of a child must establish his paternity during the lifetime of the child if he is to inherit from the estate of the deceased child.

The following facts are not in dispute. On January 19, 1983, Edith Martin and her son, Pat Roberts III, were simultaneously killed in an automobile accident. At the time of his death, Pat Roberts III was approximately eight months old, and he died intestate. Before their deaths, Martin and her son had been living with the defendant, Pat Roberts, Jr. The defendant had been living with Martin since 1974 but the couple never had been legally married. The defendant had contributed to the support of Pat Roberts III throughout the child's life, and he was acknowledged as the child's father on the child's birth certificate. No legal determination of paternity, however, had been made during the child's lifetime. The child was survived by a half-sister, Leslie Nicole Martin, who had been born to Edith Martin and a man other than the defendant in 1971.

On March 4, 1983, the plaintiff, attorney Raymond Ganim, was appointed guardian ad litem for Leslie Nicole Martin. On March 9, 1983, the defendant, pursuant to General Statutes § 46b-172a,[1] filed an application with the Probate Court, district of Stratford,

---

[1] General Statutes § 46b-172a provides in part: "(a) Any person claiming to be the father of a child born out of wedlock may at any time but no later than sixty days after the date of notice under section 45-61d, file

seeking to be declared the father of Pat Roberts III. On May 24, 1983, the Stratford Probate Court adjudicated the defendant the father of the deceased child. On June 16, 1983, the defendant was appointed administrator of the estate of Pat Roberts III. Thereafter, the defendant, acting as administrator, petitioned the Probate Court for an advance distribution to himself as sole distributee of the estate. On January 14, 1985, the Probate Court approved the defendant's petition for an advance distribution but stayed its order pending an appeal by a proper party in interest.

On January 31, 1985, the plaintiff appealed from the decision of the Probate Court to the Superior Court, claiming that the defendant had no right to receive a distribution from the estate of Pat Roberts III because the defendant had failed to be adjudicated the father of the deceased child during the child's lifetime as required by General Statutes § 46b-172a.[2] The trial

a claim for paternity with the court of probate for the district in which either the mother or the child resides, on forms provided by such court. . . .

"(c) The child shall be made a party to the action. Said child shall be represented by a guardian ad litem appointed by the court . . . .

"(g) Once alleged parental rights of the father have been adjudicated in his favor . . . disputes involving custody, visitation or support shall be transferred to the superior court under chapter 815j, except that the probate court may enter a temporary order for custody, visitation or support until an order is entered by the superior court. . . ."

[2] We note that the plaintiff did not contest the Probate Court's adjudication of paternity until the defendant applied for an advance distribution some twenty months later, long after the time specified in General Statutes § 45-289 for taking appeals had elapsed. The plaintiff, although he timely appealed from the order approving the advance distribution is, in essence, contesting the adjudication of paternity made by the Probate Court from which no appeal had been taken. We note, however, that the defendant has not claimed that this issue is barred by the doctrine of res judicata. Moreover, even if the plaintiff had made such a claim, we would not find it to be availing. Because we hold in this opinion that the trial court correctly concluded that no adjudication of paternity under General Statutes § 46b-172a can be made after the child's death, we find that the earlier adjudication of paternity made by the Probate Court was outside of its jurisdiction and was a plain excess of authority subject to attack in a collateral proceeding. See *Meinket* v. *Levinson*, 193 Conn. 110, 114, 474 A.2d 454 (1984).

court agreed with the plaintiff and sustained the appeal from probate. The defendant has appealed.

The defendant first claims that the trial court erred in construing § 46b-172a to require that a paternity action under this statute must be brought during the lifetime of the child. The defendant asserts that such a construction "amounts to a seamless web of statutory construction which flies in the face of reality." We disagree.

A primary rule of statutory construction is that if the language of the statute is clear, it is presumed that the words express the intent of the legislature. *Orticelli* v. *Powers,* 197 Conn. 9, 13, 495 A.2d 1023 (1985); *State* v. *Smith,* 194 Conn. 213, 222, 479 A.2d 814 (1984); *Gomeau* v. *Forrest,* 176 Conn. 523, 526, 409 A.2d 1006 (1979). The court must interpret the statute as written; *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980); and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. *Peck* v. *Jacquemin,* 196 Conn. 53, 63, 491 A.2d 1043 (1985); *Seaman* v. *Climate Control Corporation,* 181 Conn. 592, 605, 436 A.2d 271 (1980). "Each word used by the legislature should be given effect and, as far as possible, the entire enactment is to be harmonized." *State* v. *Parmalee,* 197 Conn. 158, 162, 496 A.2d 186 (1985); *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978); *Winchester* v. *Connecticut State Board of Labor Relations,* 175 Conn. 349, 355–56, 402 A.2d 332 (1978). Words and phrases of a statute are to be construed according to the commonly approved usage of the language. *Shieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 174, 479 A.2d 1191 (1984); *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 570, 440 A.2d 767 (1981).

Applying these principles to the statutory language of General Statutes § 46b-172a, we conclude that an

adjudication of paternity under this statute can only be made during the lifetime of the child. Each subsection of the statute speaks in terms of a living child. Subsection (a) provides: "Any person claiming to be the father of a child born out of wedlock may . . . file a claim for paternity with the court of probate for the district in which . . . the child *resides* . . . ." (Emphasis added.) Subsection (c) provides: "The child *shall* be made a *party to the action.* Said child shall be represented by a *guardian ad litem* . . . ." (Emphasis added.) Furthermore, subsection (g) provides "[t]hereafter, disputes involving *custody, visitation* or *support* shall be transfered to the superior court . . . except that the probate court may enter a temporary order for *custody, visitation* or *support* . . . ." (Emphasis added.) Only a living child "resides" in a district, can be made a "party" to the action, can be represented by a guardian ad litem; see General Statutes § 45-54 (e); or can be the subject of custody, visitation and support orders. The trial court correctly concluded that an adjudication of paternity, under General Statutes § 46b-172a, can only be made during the lifetime of the minor child.[3] Cf. *Hayes* v. *Smith,* 194 Conn. 52, 58–61, 480 A.2d 425 (1984) (paternity action under General Statutes § 46b-160 must be instituted during the lifetime of putative father).

The defendant contends, however, that the savings statute, General Statutes § 52-599, operates to preserve the defendant's right to establish his paternity under General Statutes § 46b-172a. General Statutes § 52-599 provides in part that "[a] cause or right of action shall not be lost or destroyed by the death of any person, but shall survive in favor of or against the executor or

[3] The legislature might well have concluded that a paternity adjudication should take place during the lifetime of all the relevant parties in order to afford access to blood grouping tests. Cf. *Moore* v. *McNamara,* 201 Conn. 16, 513 A.2d 660 (1986).

administrator of the deceased person." The defendant contends that a paternity action is a civil action and comes within the provisions of General Statutes § 52-599.

We find no merit in this contention. The savings provisions of § 52-599 do not apply to "any civil action or proceeding whose prosecution or defense depends upon the continued existence of the persons who are plaintiffs or defendants." General Statutes § 52-599 (c) (2). Because § 46b-172a expressly requires that proceedings for an adjudication of paternity include a living child as a party, we find this exception to be applicable. See *Hayes* v. *Smith,* supra, 63–64.

The defendant next contends that the trial court erred in failing to address his state and federal constitutional claims. The defendant asserts that had the trial court addressed these claims, it would have found that its construction of § 46b-172a violated the equal protection[4] and due process clauses[5] of the fourteenth amendment to the United States constitution and the Connecticut constitution. We construe the plaintiff's claim as a claim that the trial court's construction of General Statutes § 46b-172a discriminates on the basis of sex in that it requires unmarried fathers to undergo a statutory legitimization procedure not required of an

[4] Because the equal protection provisions of the federal constitution and our state constitution have the same meaning and limitations; *Keogh* v. *Bridgeport,* 187 Conn. 53, 66, 444 A.2d 225 (1982); and because the defendant has not attempted to distinguish between his state and federal equal protection rights; see *State* v. *Alexander,* 197 Conn. 180, 183 n.1, 496 A.2d 486 (1985); we view our discussion of the defendant's federal claim as controlling his state claim.

[5] Because the defendant has made only a bare assertion of a due process violation without developing his argument either in his brief or at oral argument, we deem his due process claims to be abandoned. *Hayes* v. *Smith,* 194 Conn. 52, 66 n.12, 480 A.2d 425 (1984); *Rodriguez* v. *Mallory Battery Co.,* 188 Conn. 145, 149, 448 A.2d 829 (1982).

unmarried mother[6] in order to inherit from a deceased child.[7]

We conclude that the case of *Parham* v. *Hughes,* 441 U.S. 347, 99 S. Ct. 1742, 60 L. Ed. 2d 269 (1979), controls this claim. In that case, a minor child and his mother were killed in an auto accident, and the biological father attempted to recover for the child's wrongful death in a Georgia state court. The father had never legitimized the child, although he had signed the child's birth certificate and contributed to his support. While Georgia law allowed a mother of an illegimate child to bring a wrongful death action, the father could bring a wrongful death action only if, inter alia, he had legitimized the child. Id., 348–49. The father claimed that the Georgia statute violated the federal equal protection clause because the statute discriminated between unmarried mothers and unmarried fathers by requiring only unmarried fathers to utilize the statutory legitimization procedure in order to bring a wrongful death action.

The United States Supreme Court disagreed, with a majority of the court holding that the gender classification in the Georgia statute did not violate the equal protection clause of the fourteenth amendment. A plurality of the court held that the statute did not invidiously discriminate based on gender, because the statute did not reflect any broad generalizations about men as a class, but rather distinguished between fathers who had legitimized their children and those who had not.

---

[6] There is no statutory requirement that unmarried mothers undergo a legitimization procedure to establish their maternity of illegitimate children.

[7] As the alleged discriminatory classification in this case is based on gender, this case is distinguishable from cases addressing the constitutionality of classifications based on illegitimacy. *Parham* v. *Hughes,* 441 U.S. 347, 352–53, 99 S. Ct. 1742, 60 L. Ed. 2d 269 (1979); see *Lalli* v. *Lalli,* 439 U.S. 259, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978); *Trimble* v. *Gordon,* 430 U.S. 762, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977); *Hayes* v. *Smith,* 194 Conn. 52, 65–69, 480 A.2d 425 (1984).

Id., 355–56. The plurality, therefore, applied the "rational relationship" test[8] and held that the statutory classification was a rational means for addressing the legitimate state interest in proving paternity. Id., 357–58. In a concurring opinion, Justice Powell held that the statutory classification did involve a gender-based distinction and decided, therefore, that the statute should be reviewed under the intermediate scrutiny standard afforded to gender classifications. Id., 359 (Powell, J., concurring). He concluded, however, that the gender-based distinction in the statute was substantially related to the achievement of the important state objective of avoiding difficult problems in proving paternity after the death of an illegitimate child. Id., 360–61. A majority of the court, therefore, found no equal protection violation in the statutory scheme.[9]

---

[8] The United States Supreme Court has developed several standards for reviewing statutory classifications that are claimed to violate the equal protection clause. Laws that do not involve "inherently suspect" classifications have traditionally been evaluated to determine only if the classification bears a rational relationship to a permissible state objective. See, e.g., *New York City Transit Authority* v. *Beazer,* 440 U.S. 568, 592, 99 S. Ct. 1355, 59 L. Ed. 2d 587 (1979); *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 186, 479 A.2d 1191 (1984). Classifications that are inherently suspect, such as racial classifications, or those that impinge upon the exercise of a fundamental right, are subject to "strict scrutiny," and will be upheld only if the classification is necessary to further a compelling state interest. *McLaughlin* v. *Florida,* 379 U.S. 184, 191–92, 85 S. Ct. 283, 13 L. Ed. 2d 222 (1964); *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 596, 479 A.2d 793 (1984). In recent years, the United States Supreme Court has applied an intermediate level of scrutiny to certain gender-based classifications, upholding the classification if it is substantially related to an important governmental objective. *Craig* v. *Boren,* 429 U.S. 190, 197, 97 S. Ct. 451, 50 L. Ed. 2d 397 (1976), reh. denied, 429 U.S. 1124, 97 S. Ct. 1161, 51 L. Ed. 2d 574 (1977); see also note, "The End of an Era for Single-Sex Schools?: *Mississippi University for Women* v. *Hogan,*" 15 Conn. L. Rev. 353, 355–63 (1983).

[9] The four dissenting members of the Court found the statute to contain a gender-based classification which was not substantially related to an important governmental objective. *Parham* v. *Hughes,* 441 U.S. 347, 361–68, 99 S. Ct. 1742, 60 L. Ed. 2d 269 (1979) (White, J., dissenting).

Here, the defendant has raised essentially the same equal protection claim that the United States Supreme Court rejected in *Parham* v. *Hughes,* supra. The same state interest in avoiding fraudulent claims in a deceased child's estate that was recognized by both the plurality and concurring opinions in *Parham* is presented by the facts of this case. See also *Hayes* v. *Smith,* supra, 68–69 (recognizing that the state has a substantial interest in minimizing problems in the administration of estates arising out of unresolved claims of paternity). We conclude, therefore, that the state interest in this matter is sufficient to justify the implicit gender classification in § 46b-172, and that such a classification does not violate either state or federal equal protection clauses.

The defendant, during the lifetime of the child, never sought an adjudication of paternity through any of the several avenues available to him.[10] The defendant could have acknowledged paternity voluntarily under § 46b-172,[11] or sought an adjudication of paternity during the lifetime of the child under § 46b-172a, or, of

[10] The defendant's claim that he acknowledged paternity by consenting to the inclusion of his name on the child's birth certificate is unavailing. The statutes that provide for an adjudication of paternity require a written acknowledgment and an affirmation under oath, both of which must be entered as an order of the appropriate court. The fact that the defendant's name appears on the birth certificate is only evidence of paternity, as is the fact that the child lived with, and received support from, the defendant.

[11] General Statutes (Rev. to 1983) § 46b-172 provides in part: "(a) In lieu of or in conclusion of proceedings under section 46b-160, the written acknowledgment of paternity executed by the putative father of the child when accompanied by a written affirmation of paternity executed and sworn to by the mother of the child and filed with the superior court for the geographical area in which the mother of the child or the putative father resides shall have the same force and effect as a judgment of that court; and an agreement to support the child by payment of a weekly sum until the child attains the age of eighteen years, together with provisions for reimbursement for lying-in expense, accrued maintenance and reasonable expense of prosecution of the petition, when filed with, and approved by a judge

course, he could have married the child's mother and thus legitimized the child pursuant to General Statutes § 45-274 (b) (1).[12] He pursued none of these options during the child's lifetime. Had he done so, he would have been legally liable for the support and maintenance of the child and would have assumed other legal responsibilities of parenthood. Without having done so, however, he cannot assume the status of legal beneficiary upon the child's death.

There is no error.

In this opinion the other justices concurred.

of, said court, at any time, shall have the same force and effect, retroactively or prospectively in accordance with the terms of said agreement, as an order of support entered by that court, and shall be enforceable and subject to modification in the same manner as is provided by law for orders of the court in such cases. . . ."

[12] General Statutes § 45-274 (b) (1) provides: "Children born before marriage whose parents afterwards intermarry shall be deemed legitimate and inherit equally with other children."