[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S REQUEST FOR A TEMPORARY INJUNCTION
The plaintiff in this action is a committee comprised of taxpayers, residents, property owners and voters of the Borough of Jewett City (hereinafter referred to as the "Borough"). The defendant is a receiver for the Borough appointed by the Governor pursuant to Special Act No. 93-4, An Act Concerning Certain Obligations of the Borough of Jewett City (hereinafter referred to as the "Special Act"). The plaintiff seeks a temporary and permanent injunction prohibiting and restraining the defendant from disbanding the Borough police department and selling or transferring any of its equipment, vehicles and supplies and an order voiding any contracts into which the receiver has entered which would facilitate resident state troopers to replace the Borough police department.
On June 21, 1994, the Court denied the defendant's motion to dismiss the plaintiff's complaint on three separate theories of sovereign immunity of the defendant, lack of standing of the plaintiff to sue and non-justiciable political question. On June 23, 1994, the court held a hearing on the plaintiff's request for a temporary injunction during which both parties presented oral testimony and documentary evidence in support of their respective positions with reference to the propriety of the granting of a temporary injunction in this matter. On June 24, 1994, counsel for the parties filed extensive post-hearing briefs.
The preliminary issue presented to the court is whether the proposed action of the defendant to disband the Borough police department and replace it with two resident state troopers is in excess of the receiver's statutory authority under the Special Act. The court determined in its decision on the defendant's motion to dismiss that the allegation made by the plaintiff in paragraph 25 of Count 3 of its amended complaint that the receiver's actions go "beyond the Receiver's scope of authority and in excess of his statutory authority," together with other allegations made by the plaintiff of a threat to the safety of the persons and the property of the members of the plaintiff as a result of decreased police protection in the Borough, satisfy the CT Page 6431 requirement that acts by an officer or agent of the state in excess of statutory authority must be alleged to void the bar of sovereign immunity in suits against such officer or agent.Fetterman v. University of Connecticut, 192 Conn. 539, 553
(1984); Duguay v. Hopkins, 191 Conn. 222, 227 n. 4 (1983); andWeaver v. Ives, 152 Conn. 586, 590-91 (1965).
The court now must further determine whether the proposed action of the defendant is within his statutory authority under the Special Act and, if not, whether a temporary injunction should issue enjoining the defendant from proceeding with his proposed action.
The Special Act provides, in part, as follows:
 Sec. 1. It is hereby found and declared that a financial emergency exists in the borough of Jewett City, that the continued existence of this financial emergency is detrimental to the general welfare of the borough and the state, that the borough's ability to borrow in the public credit markets and the resolution of this financial emergency is a matter of paramount public interest and that to achieve this resolution it is necessary, appropriate and an essential public purpose to provide in this act for the financing of deficits resulting from the borough's operations, the imposition of financial management controls and the creation of a receivership to review and conduct the financial affairs of the borough of Jewett City, all in order to maintain access to public credit markets, to fund the borough's accumulated deficits and to restore financial stability to the borough of Jewett City.
 Sec. 6. The receiver shall be responsible for formulating and implementing a borough recovery plan CT Page 6432 with the following objectives: (1) To secure the fiscal stability of the borough, including the establishment of a balanced annual budget, a three-year financial plan, and the implementation of prudent financial management techniques, including generally accepted accounting principles; (2) to reduce costs, including the restructuring of services, if necessary; and (3) to establish a stable balance of revenue sources, including fees, taxes, special assessments and any other revenue.
The court makes the following findings of fact.
In 1993 the Borough was in a chaotic financial situation. The four prior fiscal years had ended with substantial budget deficits, the Borough had defaulted on an October, 1992, sewer loan payment and the budget proposals for fiscal year 1993-1994 had been defeated by Borough voters on four separate occasions.
As a result, nearly half of the registered voters in the Borough submitted a petition to the General Assembly requesting the intervention of the State to resolve the Borough's financial crisis. In response to the petition, the General Assembly adopted the Special Act, which was approved on March 31, 1993.
In section 1 of the Special Act, the General Assembly specifically "found and declared that a financial emergency exists in the borough of Jewett City" and that "the imposition of financial management controls and the creation of a receivership to review and conduct the financial affairs of the borough" was necessary "to restore financial stability to the borough." In section 6 of the Special Act, the receiver was given the responsibility for formulating and implementing a Borough recovery plan with the objectives of securing the financial stability of the borough, reducing costs and establishing a stable balance of revenues. In order to reduce costs, the receiver was specifically empowered to restructure Borough services, if necessary. CT Page 6433
On June 12, 1993, Borough voters defeated the fourth budget proposed for fiscal year 1993-1994 and approved the receivership. Following his appointment, the receiver secured the adoption of a budget which he proposed. The receiver analyzed the Borough's finances and determined that the Borough had a high unemployment rate, a high mill rate, a low tax collection rate and an exceptionally high effective tax rate.
On October 19, 1993, the receiver conducted an advisory referendum in the Borough and in the Town of Griswold (hereinafter referred to as the "Town") of which the Borough is a part and to which Borough taxpayers pay town taxes in addition to the taxes they pay to the Borough. Town voters overwhelmingly rejected taking over the Borough police department and Borough voters separately voted against continuing the Borough's police department at its then expense level. Borough voters also narrowly rejected two different options for downsizing or using state troopers for Borough police protection.
Upon further study of the financial conditions of the Borough and the Town and the size of the Borough police department in relation to crime statistics and the size of police departments in other municipalities, the receiver, in accordance with the mandate of the Special Act, formulated a Borough recovery plan which included disbanding of the Borough police department and the hiring of two resident state troopers through the Town to replace the department. The receiver's plan was unanimously approved by the Borough Board of Burgesses on January 5, 1994, although one burgess who did not support the plan was unable to attend the meeting due to illness.
The receiver's proposal to disband the Borough police department and replace it with two resident state troopers generated intense opposition in the Borough. On May 6, 1994, an advisory vote of Borough voters on a budget proposed by the receiver, which budget reflected the savings effected by the receiver's proposal for police protection, was rejected by a vote of 350 to 151. The vote represented approximately one-third of registered voters in the Borough.
Notwithstanding the May 6th vote, the receiver intends to disband the Borough police department at midnight June 30, 1994, and replace it with two resident state troopers effective CT Page 6434 July 1, 1994. The receiver testified that failure to eliminate the police department would result in an increase in the tax rate in the Borough from 7 mills to 10 mills, the prolonging of the receivership and the possibility of consolidation of the Borough with the Town being eliminated because of the Town's opposition to taking over the Borough police department.
Much testimony was elicited during the hearing by both parties as to the effect which the proposed action of the receiver would have upon the adequacy of police protection in the Borough. The plaintiff's witnesses claimed that the lack of the presence of police in the Borough on a twenty-four hour, seven-day per week schedule would jeopardize the safety of the residents of the Borough and the security of their property and would lead to increased crime in the Borough, particularly increases in serious domestic violence, drug offenses and youth gangs.
Testimony offered by the defense claimed that two resident state troopers would afford adequate protection to the Borough in view of its small population and very limited land area and the availability of sufficient back-up protection by state police patrols in the Borough and in the surrounding area and by resident state troopers in other towns in the area. The defendant also testified that his budget for the Borough included a $60,000.00 contingency fund for two additional full-time constables or an additional resident state trooper, if needed.
In view of the Court's finding of facts, the determination of whether the proposed action of the defendant is in excess of his statutory authority under the Special Act rests primarily upon the express authority given to the receiver under the Special Act, particularly the responsibility given to the receiver under subsection (2) of section 6 "to reduce costs, including the restructuring of services, if necessary."
In determining the extent of the receiver's authority under the Special Act reference may be made to special acts adopted by the General Assembly in response to financial crises experienced by other municipalities in the State.
In Special Act No. 88-80, An Act Authorizing the Issuance of Bonds by the Town and City of Bridgeport, the CT Page 6435 General Assembly established the Bridgeport Financial Review Board "to review the financial affairs" of Bridgeport, and in Special Act No. 92-5, An Act Concerning the Guarantee by the State of Certain Obligations of the Town and City of West Haven, the General Assembly established the West Haven Finance Planning and Assistance Board to review and approve or disapprove West Haven's annual budget and financial plan.
Neither Special Act No. 88-80 nor Special Act No. 92-8 gives to the finance board created by such legislation the right "to conduct" as well as "to review" the financial affairs of the involved municipality. Section 1 of the Special Act specifically gives the receiver such authority. Moreover, neither Special Act No. 88-80 nor Special Act No. 92-8 gives to the finance board the power to restructure services, if necessary, as provided in subsection 2 of section 6 of the Special Act for the receiver. The Special Act, therefore, appears to be unprecedented in the authority it gives to the defendant to conduct and control the Borough's financial affairs.
Notwithstanding the broad powers given by the Special Act to the defendant, the plaintiff argues that "restructuring, a service does not include disbanding the service and, therefore, the defendant's proposal to disband the Borough police department is beyond the plain language of the Special Act and exceeds his statutory authority.
The Special Act does not define the word "restructuring." When a word in a statute is undefined, the word is construed according to its commonly approved usage; General Statutes § 1-1(a); Ganim v. Roberts, 204 Conn. 760, 763
(1987); and it is appropriate to look to the common understanding of the word expressed in dictionaries. Caldor,Inc. v. Heffernan, 183 Conn. 566, 571 (1981).
"Restructure" is defined to mean "to effect a fundamental change in (as an organization or system)". The Random House Dictionary of the English Language (2nd ed. unabridged 1987). The proposal by the receiver to disband the Borough police department and replace it with two resident state troopers would effect a fundamental change in the organization or system for the provision of police protection in the Borough and, therefore, would fall within the definition of "restructure". CT Page 6436
The defendant has determined that his proposal is necessary to reduce costs in the Borough in order to accomplish the purposes of the Special Act. Based on the conflicting testimony offered during the hearing, the court cannot say that the proposal is not necessary. The court, therefore, finds that the proposal of the defendant to disband the Borough police department and replace it with two resident state troopers is within the authority given to the defendant under the Special Act.
Based on the foregoing, the court must find that the principle that the sovereign cannot be sued without its consent prohibits this suit for injunctive relief against the receiver who is acting within his statutory authority. Weaver v. Ames, supra at 590-91.
Accordingly, the plaintiff's request for a temporary injunction against the defendant is denied.