FITZSIMMONS v. NEW YORK STATE ATHLETIC COMMISSION et al.

(Supreme Court, Special Term, New York County. January 27, 1914.)

1. INJUNCTION (§ 75*)—OFFICIAL ACTS—DETERMINATION OF ATHLETIC COMMISSION.

The determination whether a prize fighter who applied to the State Athletic Commission for permission to engage in a boxing contest was capable of safely competing in such contest because of his age, physical condition, etc., was primarily for the State Athletic Commission rather than for a court of equity, in a suit to enjoin the enforcement of the order of the Commission prohibiting the contest.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 143, 144, 150; Dec. Dig. § 75.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PRIZE FIGHTING (§ 1*)—OFFENSES—"PRIZE FIGHTING."

The offense of prize fighting was not known at common law, though persons engaged in such contest were answerable for assault and battery, breach of the peace or riot; "prize fighting" being defined as the act of fighting for a prize or boxing in public for a reward or wager.

[Ed. Note.—For other cases, see Prize Fighting, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 6, pp. 5614, 5615.]

3. CONSTITUTIONAL LAW (§ 274*) — DUE PROCESS OF LAW — DEPRIVATION OF LIBERTY.

Laws 1911, c. 779, creating the State Athletic Commission and authorizing it to regulate boxing contests, is a lawful exercise of the police power, so that a pugilist, prohibited by the Commission from taking part in a boxing contest, cannot claim that he was thereby deprived of his "liberty" without due process of law, if the Commission did not abuse its discretion in its ruling.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 726; Dec. Dig. § 274.*]

4. CONSTITUTIONAL LAW (§ 255*)—DUE PROCESS OF LAW—DEPRIVATION OF "LIBERTY."

The word "liberty" as used in the state and federal Constitutions means, in a negative sense, freedom from restraint, but in a positive sense, it involves the idea of freedom secured by the imposition of restraint, and it is in this positive sense that the state, in the exercise of its police powers, promotes the freedom of all by the imposition upon particular persons of restraints which are deemed necessary for the general welfare.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 746–761; Dec. Dig. § 255.*

For other definitions, see Words and Phrases, vol. 5, pp. 4126–4130; vol. 8, pp. 7705, 7706.]

5. CONSTITUTIONAL LAW (§ 120*)—IMPAIRMENT OF CONTRACT.

If an order of the State Athletic Commission, prohibiting a prize fighter from taking part in a boxing contest under the auspices of an athletic club, is a lawful exercise of the Commission's discretion, it cannot be claimed that the order is not valid on the ground that it impairs a contract by the pugilist with the athletic club for holding the contest; since if prize fighting is prohibited by law, an agreement to engage in a prize fight is illegal.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 279–285, 292; Dec. Dig. § 120.*]

6. THEATERS AND SHOWS (§ 1*)—REGULATION BY ATHLETIC COMMISSION—VALIDITY OF DECISION.

Laws 1911, c. 779, created the New York State Athletic Commission, and section 3 vested in it the sole discretion and control over all boxing exhibitions, and provided that no such exhibitions should be held except by its authority, and that it should issue licenses to associations under the auspices of which such contests are held, which shall be revocable upon its order. Pursuant to such authority, the Commission adopted rules providing that in all boxing exhibitions, contestants, etc., should be under its control, and that any association which violated such rule should forfeit its license. *Held*, that in absence of a showing that the Commission was actuated by improper motive, the court would not interfere with the exercise of its discretion in prohibiting a prize fighter who was 51 years of age from engaging in a boxing contest on the ground that, because of his age and physical condition, he was not qualified to take part in such contest; the order having been made upon the advice of a com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

petent physician that it would be dangerous to permit him to take part in the contest.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 1; Dec. Dig. § 1.*]

Action by Robert Fitzsimmons against the New York State Athletic Commission and others. On motion for injunction pendente lite. Motion denied.

Motion for an injunction pendente lite in an action in which plaintiff seeks to restrain defendants from enforcing an order addressed to the Atlantic Garden Athletic Club, prohibiting it from allowing plaintiff to engage in a boxing contest under its auspices.

George C. Norton, of New York City (Sam L. Cohen, of New York City, of counsel), for the motion.

Thomas Carmody, Atty. Gen. (William A. McQuaid, Deputy Atty. Gen., of counsel), opposed.

SEABURY, J. This is an application for an injunction pendente lite in an action in which the plaintiff seeks to have the defendants restrained from enforcing a certain alleged order addressed to the Atlantic Garden Athletic Club, prohibiting it from allowing the plaintiff to engage in a boxing contest under its auspices. The papers now before the court show that the plaintiff has engaged in the vocation of boxing for the greater part of his life; that he has engaged in about 370 ring contests, and has held the title "champion of the world" and is now "the light heavyweight champion boxer of the world." The affidavits set forth with great detail the many boxing contests or prize fights in which this plaintiff has engaged and a long record of his achievements in this sphere of activity. The defendants named in the complaint are the New York State Athletic Commission and the individual members who now compose that Commission. The plaintiff on December 24, 1911, entered into a contract with the Atlantic Garden Athletic Club, wherein he agreed, in consideration of 45 per cent. of the gross receipts received by the club from said contest, to box any person deemed suitable by the parties to the contract. The Atlantic Garden Athletic Club has been licensed by the defendant the New York State Athletic Commission to hold boxing exhibitions, and the said defendant has served upon its licensee the order against which this plaintiff complains. The order of the defendant is as follows:

"December 30, 1913. Atlantic Garden Athletic Club, 50–52 Bowery, New York City. The State Athletic Commission, after discussing the question of Bob Fitzsimmons appearing, in its various angles, have decided unanimously it is for the best interests of the boxing game that he should not be permitted to box in this state, and I have been instructed by the Commission to write and inform you of their decision prohibiting Bob Fitzsimmons from boxing in this state, and hereby advise you to that effect. Yours very truly, Charles J. Harvey, Secretary."

[1] The affidavits submitted on behalf of the defendants show that the plaintiff is 51 years of age, and that in the opinion of the members of the Commission and of the physician whom they consulted the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff is incapacitated, by reason of his age and physical condition, from competing in a boxing contest. These allegations as to the plaintiff's physical condition are controverted by the plaintiff, and by the evidence of physicians who have examined him. The issue of fact thus created is primarily for the determination of the State Athletic Commission rather than a court of equity. The plaintiff asserts that said order deprives him of his right to pursue a lawful calling without "due process of law," and deprives him of his "liberty" as that term is used in the fourteenth amendment to the federal Constitution; that it impairs the obligations of the plaintiff's contract with the Atlantic Garden Athletic Club, and that it is in excess of the jurisdiction conferred by law upon the New York State Athletic Commission. It is necessary to determine whether these claims have merit. The first contention urged that the order of the defendants deprives the plaintiff of his right to pursue a lawful calling without "due process of law," and deprives him of his "liberty" as that term is used in the fourteenth amendment to the federal Constitution, is the plea which is so frequently urged against every police regulation which either our state or federal government attempts to enforce.

[2] The specific offense of prize fighting was unknown to the common law (Sullivan v. State, 67 Miss. 346, 7 South. 275), although those engaged in such a contest were answerable for assault and battery, breach of the peace or riot, dependent upon the circumstances of the case. Prize fighting has been defined as the act of fighting for a prize, or boxing in public for a reward or wager. Several of the states have either prohibited prize fighting altogether, or strictly prescribed the conditions under which such contests can be conducted. In this state the Legislature, in creating the New York State Athletic Commission, has attempted to legalize boxing when conducted under the jurisdiction of the State Athletic Commission. Confronted with the question as to whether it should prohibit prize fighting or sparring altogether, or leave such contests unaffected by legislation, the lawmaking body of this state has adopted a middle course, and has legalized boxing when conducted under state control. Two main purposes have prompted such legislation: First, the desire to prevent as far as possible certain brutal and degrading features which have in the past sometimes attended such contests, and, second, to promote and protect such contests when conducted within the legitimate limits of a sport. To achieve those purposes the state has created the Athletic Commission and authorized that Commission to prescribe stringent rules governing the conditions under which such contests can be held. Section 1710 of the penal law (Consol. Laws, c. 40) of this state makes prize fighting and sparring a crime, but section 12 of the act, creating the defendants the New York State Athletic Commission, excepts from the operation of the penal law boxing contests conducted by clubs licensed by the defendants the New York State Athletic Commission. Reading these two statutes together, it is apparent that the vocation of prize fighting or sparring is an occupation subject to governmental control. While the prohibition contained in the penal law against such contests does undoubtedly impair the liberty of those who desire to

pursue such a vocation, it does so only in the sense that other provisions of the penal law restrain persons from the exercise of a liberty which is deemed harmful to the community.

[3] A glance at the penal law of the state will reveal a variety of occupations and activities in which the citizen is denied the right to exercise his liberty. No matter how comprehensive and elastic the provisions of the fourteenth amendment of the federal Constitution may have been held to be, these provisions do not protect those liberties which civilized states regard as properly subject to regulation by its penal law. Whenever the state declares that certain acts theretofore legal shall constitute a crime, it removes such act from the free field and brings it within the law. The effect of such a law is to restrict the liberty of those who desire to perform such acts, but if the law is within the police power of the state it cannot be held unconstitutional merely because it restricts the liberty of a citizen by making unlawful acts which were formerly regarded as lawful. It is not long ago that the sale of opium and cocaine were uncontrolled by law, or that lotteries were permitted and prize fighting and pugilism were not prohibited. These are examples of acts which, while formerly deemed lawful, are now prohibited by the state in the exercise of its police power.

[4] "Liberty" is a word with a double meaning. In a negative sense it means freedom from restraint. In a positive sense it secures freedom by the imposition of restraint. It is in this positive sense that the state, in the exercise of its police and general welfare powers, promotes the freedom of all by the imposition of such restraints upon some as are deemed necessary to secure the general welfare. In view of the character of the occupation in which the plaintiff is engaged, he has the right to pursue it only in so far as the state authorizes him so to do. The limitations imposed by the laws of this state upon the pursuit of this particular vocation renders it lawful only when pursued under the control and jurisdiction of the State Athletic Commission. It will be necessary to inquire as to the extent of the jurisdiction of the State Athletic Commission, in order to determine whether the order against which the plaintiff complains was within its lawful authority.

[5] Before doing so it is necessary to make brief reference to the contention of the plaintiff that the order of the Athletic Commission impairs the obligations of the plaintiff's contract with the Atlantic Garden Athletic Club. In reference to this contention, it is only necessary to point out that if the order is a valid order, and lawfully prohibits the licensee from allowing the plaintiff to engage in a boxing contest under its auspices, the fact that such order makes impossible the carrying out of a contract which the plaintiff has already made is of no legal significance. Where prize fighting is prohibited by law an agreement to engage in a prize fight is a conspiracy to engage in a crime, and as such illegal and void. Seville v. State, 49 Ohio St. 117, 30 N. E. 621, 15 L. R. A. 516.

[6] It is necessary to determine the extent of the authority which the defendant Athletic Commission possesses under the law creating it,

in order to ascertain whether the order against which the plaintiff complains is in excess of its jurisdiction. The New York State Athletic Commission was created by chapter 779 of the Laws of 1911. That act defines the scope of its authority. Section 3 of that act vests in the Commission the sole direction, management, control of and jurisdiction over all boxing and sparring matches and exhibitions held within the state, and provides that no boxing or sparring match or exhibition shall be held within the state except pursuant to its authority. It also provides that the State Athletic Commission shall issue licenses to clubs, corporations, or associations under whose auspices such contests are held, and that every license shall be subject to such rules and regulations as the Commission may prescribe. Under this act the Commission has general authority over all boxing and sparring matches and exhibitions. To it is committed "the sole direction, management and control of and jurisdiction over" such contests. It is empowered to make such rules for the administration of its duties not inconsistent with the statute as it may deem expedient. Every license which it issues is subject to such rules and regulations as it prescribes. The licenses issued, pursuant to its authority, are by their terms revocable upon the order of the Commission. Pursuant to this ample authority the State Athletic Commission has adopted certain rules and regulations governing such contests. Rule 23 in part 1 of such regulations provides that—

"in all boxing or sparring matches or exhibitions, *contestants*, referees, timekeepers, seconds and examining physicians shall at all times be under the control and direction of the Commission."

Rule 26 in part 2 of such regulations provides that any club, corporation or association which shall violate rule 23 of part 1 of such regulation shall forfeit its license. The provisions of the statute referred to above, taken in connection with the legislative purpose in creating the New York State Athletic Commission, leave no doubt in my mind that the Commission was designed to impose such restrictions upon boxing and sparring contests as would promote its development as a sport, while at the same time this control should be so exercised that certain brutal or dangerous features which have sometimes attended such contests should, as far as possible, be done away with. In the case now before the court the order of the defendant State Athletic Commission, in prohibiting its licensee, the Atlantic Garden Athletic Club, from allowing the plaintiff to engage in such a contest cannot be said to be arbitrary or capricious. That order is based upon the judgment of the members of the Commission after having taken the advice of a competent physician, that to allow the plaintiff to engage in such a contest would be to run the risk of serious injury to him. The risk to the plaintiff in engaging in such a contest is not a consideration purely personal to him. In the absence of proof that the Commission were actuated by unworthy motives, the court should not interfere with the exercise of the discretion which the Legislature has directed it to use. The members of the Commission have presumably been selected because of their special knowledge as to matters pertaining to such contests, and I know of no reason why the uninstructed judgment of the

court upon this subject should be deemed superior to the judgment of the Commission.

I conclude that the Commission had jurisdiction to make the order against which the plaintiff complains, and that, as there is no evidence that the Commission in making such an order were actuated by unworthy motives, or that they have acted arbitrarily or capriciously, there is no ground for interference by a court of equity with the operation of the order of the Commission.

Motion denied.