121 A.2d 652 (1956)
Ralph ZANNELLI
v.
Domenic DI SANDRO et al., as Members of the Rhode Island Racing and Athletics Hearing Board.
M. P. No. 1113.
Supreme Court of Rhode Island.
April 2 as of January 17, 1956.
*753 John Quattrocchi, Jr., Providence, for petitioner.
William E. Powers, Atty. Gen., Francis J. Fazzano, Asst. Atty. Gen., for respondent.
CAPOTOSTO, Justice.
This is a petition for a writ of certiorari to review and quash a decision of the respondent board. The writ was issued and in compliance therewith the board has certified the record of its proceedings in the matter to this court.
The petitioner Ralph Zannelli, thirty-eight years old and a well-known professional boxer with a fine record up to 1952, applied for and was refused a boxer's license for the year 1954 by the state commission on racing and athletics. In due time he appealed to the respondent board which, after a hearing de novo, denied and dismissed the appeal. The instant petition was then brought by him alleging therein that such *654 decision was contrary to law, arbitrary and unsupported by competent legal evidence.
It appears that when Zannelli applied for a license in 1952 he was required to submit to physical, neurological and psychiatric examinations, including an "electroencephalogram," an electrically recorded test to ascertain the existence of brain injury. The result of that test, as interpreted by Dr. Maurice W. Laufer, was that it "suggests that brain damage may have occurred, involving particularly the patient's dominant left hemisphere." A written report by Dr. Thomas L. Greason to the commission in January 1952 based upon the results of all the above-mentioned examinations concludes as follows: "My personal feelings, I can assure you, are against allowing Mr. Zannelli, who is 37 years of age and who has fought 250 amateur fights and approximately 125 professional fights to again enter the Ring. However on the basis of my findings I cannot suggest that he be disqualified." The commission, apparently with some reluctance, granted Zannelli a license for 1952. The success in his fights during that year was in marked contrast to the record that he had theretofore established.
In December 1952 Zannelli, at the request of his wife and as a Christmas present to her, announced his retirement from the ring. For the next two years he was employed in construction work during the day and he frequently went to a gymnasium at night. At the end of that two-year period, believing that he was in good physical condition to engage in prize fighting since Dr. James P. Londergan had so certified in the application for the boxer's license here in question, he decided to resume his former activities as he "would like to have a few fights to get myself a little money."
A written statement from Dr. Edmund B. Curran respecting Zannelli's physical condition was to the same effect as the opinion expressed by Dr. Londergan in the application under consideration. In this connection we note that the doctors just mentioned, whose integrity and professional standing are unquestioned, were previously unknown to Zannelli. He testified that he did not go to his personal friend and family physician, identified in the record merely as Dr. Indeglia, because he knew that irrespective of his then good physical condition Dr. Indeglia would not sign his application for a boxer's license as he was "always advising me to quit the ring."
The direct evidence for the commission consisted mainly of the report of another examination by Dr. Greason in 1954 and the testimony of Dr. James Flanagan based on hypothetical questions. This time Dr. Greason's recommendation to the commission was decidedly firmer than the one expressed by him in his report of 1952. His conclusion in the instant case was that notwithstanding Zannelli's good physical condition diagnostically he did not believe Zannelli "should be allowed to re-enter the ring." To such opinion he attached the following precatory language: "If the present athletic commission sees fit to relicense Mr. Zannelli I hope and pray that they also see fit to determine who he fights and who he does not fight since despite his apparent good health one can never dismiss the fact that age and his past findings render him to some degree more vulnerable to permanent injury than would be the case if he were younger."
Doctor Flanagan testified that he was a practicing physician in Providence and that he had been employed by the commission for fifteen years to examine fighters shortly before and while actually engaged in boxing contests. Based upon the hypothetical questions addressed to him, which we find substantially in accord with the pertinent circumstances in evidence, he was definitely of the opinion that to grant a boxer's license to the person described in such questions was against the interests of the individual and of the public.
The petitioner first contends that the commission was without power to deny his application for a boxer's license. His argument on this point, as we understand it, is that since the statute does not confer such power in express terms and no rule or regulation governing the matter has been adopted *655 by the commission under its statutory authority, therefore the commission in the first instance and the board on appeal were bound to grant a boxer's license to every person eighteen years or more of age who filed an application therefor in the required form. The mere statement of the contention calls for a careful examination of the statute. Unless the language of the statute is so clear as to admit no other interpretation, it is impossible to believe that the legislature intended to hold out to the people here and elsewhere that every resident of this state on attaining the age of eighteen years was a potential prize fighter, and that thereafter he could demand as of right a boxer's license by merely filing an application in the form required by the commission.
General laws 1938, chapter 606, § 12, provides that every person who shall, by previous appointment or arrangement, meet another person and engage in a fight, shall be heavily punished by imprisonment or fine. However the legislature, apparently appreciating the rather extensive interest of the people in professional boxing exhibitions, has seen fit to allow prize fighting in this state provided the persons seeking to engage in such activities first obtained a license from the designated state agency, formerly known as the Division of Athletics, and now called the Racing and Athletics Commission. General laws 1938, chap. 16, as amended by public laws 1946, chap. 1746. In view of such amendment, the word "division" in any provision of said chapter 16 hereinafter quoted is to be read as if the term "commission" was used in its place and stead.
The matter of licenses for promoters, boxers, and other designated officials taking part in a professional boxing exhibition is governed by G.L. 1938, chap. 16, §§ 4, 5, 6 and 7. In view of petitioner's contention and for reasons that will later appear, special attention is directed to the arrangement and differing scope of the provisions in § 4, as amended by P.L. 1940, chap. 886, section 1. In so far as pertinent the above-mentioned sections provide as follows. The first part of § 4 reads: "No boxing or sparring match or exhibition for a prize or a purse * * * shall take place or be conducted in this state unless licensed by the department of business regulation in accordance with this chapter * * *. In no case shall any boxing or sparring match or exhibition * * * occur on Sunday. The department, in the discretion of its director or other officer charged with the enforcement of this chapter, may require any person applying for a license or for exemption to furnish such information and references as it may desire."
Immediately following the aforesaid general prohibitory provisions and broad grant of power to the division, § 4 begins to specify the conditions governing a promoter's license, which conditions are further amplified in §§ 5 and 6. Section 7 provides: "No person shall act * * * as professional boxer" or in certain other specified capacities "unless licensed by the division." It further defines such boxer "as one who competes for a money prize or teaches or pursues or assists in the practice of boxing as a means of obtaining a livelihood or pecuniary gain."
The rules of statutory construction are well established and need but passing mention here. Where there is a real or seeming ambiguity in a statute it is the duty of the court to ascertain the intention of the legislature from a consideration of the entire statute, keeping in mind its nature, object, language and arrangement. State v. Muldoon, 67 R.I. 80. The legislative enactment should be given what appears to be the meaning that is most consistent with its policy or obvious purpose and not a forced construction. Benjamin v. Daneker, 73 R.I. 117. In construing a statute it is permissible to consider the reasonableness of the result of a particular interpretation. Vincent v. John Bowen Co., 69 R.I. 241. In any event it is not to be presumed that the legislature intended an unreasonable result.
The statute under consideration is in derogation of the common law and an exception to G.L. 1938, chap. 606, § 12, *656 which, as already stated, penalizes by imprisonment or fine any person who engages in a fight by previous appointment or engagement. It therefore should be strictly construed. Gaspee Cab Inc. v. McGovern, 51 R.I. 247. Furthermore, a license to engage in a business, occupation or activity otherwise prohibited by law, is the granting of a privilege; conversely, the denial of such a license is not the deprivation of a right, as petitioner here argues. For a discussion of this point, see Thayer Amusement Corp. v. Moulton, 63 R.I. 182, 7 A.2d 682, 124 A.L.R. 236.
Assuming, without deciding, that the arrangement of G.L. 1938, chap. 16, § 4, as amended, is inartistic and perhaps somewhat confusing at first sight, yet a careful reading of that section shows that its provisions are plainly separable into two categories, each designed to attain a different purpose. The first three sentences of that section constitute the first category and control the issuance of any license in connection with prize fighting, while the sentences that follow, or second category, begin to set forth provisions applicable only to an application for a promoter's license. The provisions in the second part of § 4 and those of §§ 5, 6 and 7, being intimately connected or related, are all subject to the broad discretionary power granted to the commission respecting its authority to investigate any application for a license to engage in prize fighting, whether as promoter or boxer, which grant of power appears in the third sentence of the first part of § 4. Because of the importance of such provision in the circumstances of the instant case we again quote that sentence at this point: "The department, in the discretion of its director or other officer charged with the enforcement of this chapter, may require any person applying for a license or for exemption to furnish such information and references as it may desire." (italics ours)
The failure to observe the distinction that we have noted between the provisions in the two parts of § 4 and the apparent disregard of the plain language of the sentence just above quoted has led petitioner to a conclusion that, if countenanced, would substantially defeat at the very threshold the real purpose and intent of the legislature in passing the statute. The petitioner's contention that the mere filing of an application in proper form entitles the applicant as of right to a boxer's license is based upon the unwarranted assumption that the broad discretionary power granted to the commission in the first part of § 4 is limited to the consideration of an application of a promoter's license as provided in §§ 4, 5 and 6, without right in the commission to exercise the same power in passing on an application for a boxer's license under § 7. We cannot believe that the legislature intended such incongruous result.
It is well known that prize fighting is a vocation dangerous to the principals and open to exploitation of the public by unconscionable persons. The safeguarding of a professional boxer from serious bodily harm or even death and the maintenance of boxing exhibitions as a sport for the benefit of the public are matters of concern to the state. When the statute in question is read as a whole, it is plain that the legislature had these considerations in mind in prescribing a system of licenses to be administered by a state agency. In our judgment, it thereby clothed the commission with discretionary power to investigate not only the qualifications and standing of a person applying for a license to promote a boxing exhibition, but also to inquire into the temperament, training and character of an applicant for a boxer's license. The basic concept of the statute is that the public is entitled to fair matches with a minimum of danger of physical harm to the principals and without suspicion that it is being exploited by them and others merely for personal advantage. See Fitzsimmons v. New York State Athletic Comm'n, 146 N.Y. Supp. 117.
It is unnecessary to indulge in further details as we find petitioner's contention clearly inconsistent with the purpose and intent of the statute. If the legislature intended to go to the extreme for which he contends, it could and would have so provided in unmistakable language. It is therefore *657 our opinion that the commission was duly authorized in § 4 to investigate the competency, responsibility and character of "any person applying for a license" whether in the capacity of promoter, as provided in §§ 4, 5 and 6, or in that of boxer and other specified officials under § 7.
The petitioner further contends that the decision of the respondent board is arbitrary, unreasonable and not based on any legal evidence. Under the present petition for certiorari only questions of law are brought to this court in accordance with the statute. It is well settled that in considering such a petition we do not pass upon the weight of the evidence. We examine the record to determine only whether the decision in question is supported by some legal evidence and not arbitrary or capricious. Rhode Island State Fair Ass'n. v. Racing and Athletics Hearing Board, 80 R.I. 486, 489, 98 A.2d 821, and cases cited.
The petitioner's argument on his contention now under consideration consists of a review of the evidence favorable to himself, disregarding or minimizing the force of material circumstances which, directly or by way of reasonable inference, support a contrary view. The object of such argument is to conclude that the board capriciously refused to grant Zannelli a boxer's license merely because of his age, thus depriving him "of his right to earn a livelihood in the business which he knows best, namely professional boxing." (italics ours) Having already fully discussed Zannelli's "right" to a boxer's license that question requires no further consideration.
After a careful examination of the entire record before us, which we have herein briefly summarized, we cannot agree with petitioner's contention. Viewed broadly, we are satisfied that there was legal evidence of record to support the decision of the board. Considering Zannelli's age, the possibility, if not probability, of exposing himself or being exposed by others to serious bodily harm, and the public interests involved, the board exercised its discretion in the matter and sustained the commission's decision denying his application for a boxer's license. Zannelli's previously established high standing as a prize fighter is in no way affected by the decision of the board in the circumstances of the instant case. Although we are sympathetic towards his desire, as he testified, "to have a few fights to get myself a little money," yet we cannot say that the decision of the board is not supported by legal evidence and therefore is unreasonable and arbitrary, as he contends.
The petition is denied and dismissed, the writ of certiorari heretofore issued is quashed, and the record certified to this court is ordered returned to the respondent board with our decision endorsed thereon.
CONDON, J., concurs in the result.
BAKER, J., did not participate in the decision.