*772 OPINION OF THE COURT
Albert A. Blinder, J.
Pursuant to a contract with boxing promoter Top Rank, Inc. (hereinafter Top Rank), Billy Ray Collins, Jr. (decedent) fought a 10-round boxing match against Luis Resto on June 16, 1983, at Madison Square Garden. The decedent’s professional record at the time was 13-0.
Unbeknownst to decedent, Resto’s gloves had been altered by the removal of horsehair padding covering Resto’s knuckles. Although decedent endured the full 10 rounds, he sustained career-ending injuries to his eyes and head.
Resto was declared the winner of the bout, but was subsequently stripped of the victory and his boxing license, after an investigation and hearing by the State Athletic Commission (hereinafter Commission). Resto and his manager, Carlos "Panama” Lewis, were indicted and found guilty of several criminal charges, including conspiracy, tampering with a sports contest, assault and criminal possession of a weapon.
The decedent returned to his home in Tennessee and, allegedly as a result of his inability to pursue his chosen career, sank into depression and began drinking heavily and using drugs. On March 7, 1984, after a night of heavy drinking, Collins drove his car off an embankment, thereby ending his life.
Decedent’s wife (personally and as administratrix) and father now sue the State of New York for wrongful death and personal injuries. Claimants allege "gross and wanton dereliction of duty, breach of contract, assault and battery, conspiracy, fraud and negligence of the Commission * * * its officers, agents, servants and/or employees”. The essence of this claim is that the Commission’s representatives at the Garden on the night of the fight either conspired with Resto and Lewis or, alternatively, failed in their duty to detect the eviscerated gloves.
As to the negligence causes of action, claimants seek to impose upon the Commission a duty of care owed to decedent, and to every boxer for that matter, to provide safe equipment, to enforce the rules of the Commission, to employ competent personnel to enforce the rules, and to "observe and detect the dangerous condition of the boxing gloves”. In particular, claimants seek to impose that duty vis-á-vis the actions of the Commission’s inspectors assigned to the Collins-Resto bout.
In an earlier diversity action in the United States District *773 Court by claimants against, inter alla, the three individual Commission inspectors assigned to the Collins-Resto fight (SD NY, 83 Civ 5480), a directed verdict was returned in favor of one, and a jury verdict was returned in favor of another. The jury could not reach a decision as to whether the third inspector, Pasquale "Patsy” Giovanelli, who actually signed Resto’s bandaging and adjusted his gloves, was culpable for failing to detect the altered state of Resto’s gloves. Accordingly, the court will not revisit the negligence issues as they pertain to the two inspectors found to be free of culpability (Schuylkill Fuel Corp. v Nieberg Realty Corp., 250 NY 304; Schwartz v Public Adm’r of County of Bronx, 24 NY2d 65; cf., Malloy v Trombley, 50 NY2d 46). What remains to be decided is whether the defendant was negligent as a result of the actions of any of its employees or for negligently hiring those employees.
The primary hurdle in our inquiry is determining whether Giovanelli, as a Commission inspector, achieved the status of an employee of the defendant. This court has previously found that a ringside physician and referee were not employees of the defendant, but were independent contractors (Classen v State of New York, 131 Misc 2d 346; see also, Rosensweig v State of New York, 5 NY2d 404). However, distinctions between a ringside physician and a referee on the one hand and an inspector on the other hand abound. The former are, respectively, approved or licensed by the Commission (McKinney’s Uncons Laws of NY §§8904, 8926, 8910), while the latter is employed by the Commission (McKinney’s Uncons Laws of NY § 8902); the former receive fees paid by the promoter (McKinney’s Uncons Laws of NY § 8926, 19 NYCRR 210.4 [a]), while the latter receives a salary (albeit per diem) from the budget of the Commission as provided for by the Legislature (McKinney’s Uncons Laws of NY § 8902); and, the former apparently cannot be members of the New York State Retirement System, while the latter may. In these regards inspectors are similar to deputies (see, McKinney’s Uncons Laws of NY § 8902), who are unquestionably employees of the defendant (Matter of Erikson v Helfand, 208 Misc 506, read on other grounds 1 AD2d 59, affd 1 NY2d 775). Given the abundant indicia of a master-servant relationship, the court concludes that Commission inspectors are employees of the defendant.
The record established that in addition to the inspectors, a deputy was also present at the Collins-Resto fight, as required *774 by McKinney’s Unconsolidated Laws of NY § 8905. Since the issue of the deputy’s culpability apparently was not addressed in the prior action, that issue may be examined here. So too may the issue of negligent hiring be examined here as it pertains to Giovanelli and the deputy. The court finds it unnecessary, however, to examine in detail the actions of Giovanelli or the deputy on the night of the fight, or of the Commission in hiring Giovanelli and the deputy. Rather, this case must be disposed of on more fundamental grounds.
The sine qua non of this negligence claim is that the defendant owed the decedent a duty of care (Kimbar v Estis, 1 NY2d 399, 403). It is black letter law that a duty of care does not arise from the naked allegation that one exists (City of Buffalo v Holloway, 7 NY 492, 498). Rather, it arises from the relationship of the parties and involves consideration of several factors, including foreseeability, public policy and control over the situation in question, to name a few (Mink v Keim, 291 NY 300, 304).
In the present case, the primary, and dispositive, question is whether the Commission owed the decedent a duty of care in inspecting Resto’s gloves to ensure that the gloves conformed to the Commission’s rules. This question implicates the historical purpose and authority of the Commission.
At common law, prize fighting was neither illegal nor regulated (Fitzsimmons v New York State Athletic Commn., 146 NYS 117, 120). In reaction to public dismay over the barbaric and illegal activities attendant upon the fight "game”, the New York Legislature outlawed prize fighting in 1856 (L 1856, ch 98). In 1911, it then authorized prize fighting under the exclusive aegis of the State Athletic Commission (L 1911, ch 779). The Commission was created to direct, manage and control the fight "game” by licensing its participants, promulgating its rules and disciplining its misdemeanants (Fitzsimmons v New York State Athletic Commn., supra, at 122). The Commission was given authority to levy fines, forfeit prizes, and suspend and revoke licenses (Fitzsimmons v New York State Athletic Commn., supra, at 122; McKinney’s Uncons Laws of NY § 8906).
In support of their contentions that the Commission owed decedent a duty of care, claimants point to several of the Commission’s rules. Rule 209.4 states, in part, that "[u]nder no conditions are gloves to be placed on the hands of the contestant until the approval of the commission is stamped on *775 the bandages by its representative.” (19 NYCRR 209.4.) Claimants assert that this rule requires a Commission representative to be present at all times during the bandaging and gloving of each boxer. The record is clear and undisputed that Giovanelli left Resto’s room after signing Resto’s bandages. When he returned, Resto’s gloves were on his hands. There is nothing in the statute, rule 209.4, or any other rule, however, that required Giovanelli’s presence at the moment Resto’s gloves were placed on his hands. Rule 209.4 only required that Giovanelli approve Resto’s bandages before the gloves were placed on his hands.
Claimants also point to rule 215.11 as creating a duty on the Commission’s part to ensure that Resto’s gloves were "new” and "not less than eight ounces.” (19 NYCRR 215.11.) The record reveals that Madison Square Garden’s "glove man”, Donald Hayes, examined the gloves after they were delivered to the Garden by the manufacturer, and retained custody over them until turned over to Resto’s trainer. The rule continues, that "[a]ll gloves are to be furnished by the licensed promoting corporation” (19 NYCRR 215.11). Thus, it was the obligation of the promoter and not the Commission to ensure that the gloves conformed to specifications. That the Commission was under a duty to inspect and guard the gloves until placed on the fighters is a groundless expansion of the rule that the court will not adopt.
Claimants next point to rule 216.18, which requires that "the gloves of each boxer will be adjusted in the dressing room under the supervision of the commission representative in charge” (19 NYCRR 216.18). Claimants contend that this rule required the presence of an inspector when Resto’s gloves were placed on his hands, as was asserted in relation to rule 209.4, or, in the alternative, an inspection of Resto’s gloves by a Commission representative. The court disagrees. The rule only requires an adjustment of the gloves, not an inspection by a Commission representative nor the presence of a Commission representative at the time of gloving.
The court notes that the only reference in the rules to the inspection of gloves is contained in rule 210.1, wherein the referee is charged with inspecting "each boxer’s gloves * * * [to] make sure that no foreign detrimental substances have been applied to either the gloves or the bodies of the boxers.” (19 NYCRR 210.1 [a].) Thus, if anyone should have inspected Resto’s gloves it was the referee, a person whose negligence *776 could not be imputed to the defendant (Classen v State of New York, 131 Misc 2d 346, supra).
It may be logically posited that the Commission has misgoverned its realm by not adopting a rule requiring a more thorough inspection of boxer’s gloves to ensure that they are not altered. Certainly, a more thorough examination of Resto’s gloves might have prevented the tragedy underlying this claim. For some reason the rules and the custom of the sport countenance a fear of getting a "foreign detrimental substance” (19 NYCRR 210.1 [a]) on the exterior of the gloves, thereby precluding the squeezing of the gloves, while no caution is taken against the removal of padding from a glove. The court urges the Commission to take action to rectify this glaring defect in the rules of boxing in this State. Given the scandalous history of modern day boxing in this State and elsewhere, it is astounding that with all of the rules concerning licensing, bonding, fees, ticket sales, taping of hands, ice buckets and water bottles, gongs, ring costumes and the lacing of gloves, inter alla, the Commission has not taken precautions against unscrupulous managers, trainers or boxers removing padding before the contest begins. It is mind-boggling that no person or entity in the fight business is charged with thoroughly inspecting the one item that necessarily comes in contact with an opponent’s head and body.
Nevertheless, the failure of the Commission in this regard is nonactionable, for its rule-making activity is a purely governmental function involving the exercise of discretion for which the defendant enjoys immunity from suit (Florence v Goldberg, 44 NY2d 189; Gross v State of New York, 33 AD2d 868; Abruzzo v State of New York, 84 AD2d 876, 877; Casarona v Pace, 175 Misc 269, 271).
It is also urged by claimants that the Commission owed the decedent a special duty of care arising out of their relationship of licensor-licensee. While the existence of a special duty of care would form the basis for liability despite the defendant’s governmental immunity (Miller v State of New York, 62 NY2d 506; De Long v County of Erie, 60 NY2d 296; Florence v Goldberg, supra, 44 NY2d, at 195-196), there is no basis for finding such a duty. Specifically, there is no evidence that Commission representatives made it a practice to thoroughly inspect gloves prior to a fight. There is likewise no other evidence that the Commission assumed any other duty upon which decedent could have relied (cf., Florence v Goldberg, supra; De Long v County of Erie, supra).
*777 As to the cause of action for breach of contract, claimants have failed to make a prima facie showing that the defendant was a party to the contract entered into between decedent and Top Rank. Although the one-page document stated that "Top Rank, Inc. and State of New York, a duly licensed Boxing Club under the laws of the State of New York” was the "party of the first part”, the contract was signed only by the promoter and decedent. Although the instrument was apparently a "boilerplate” contract previously approved as to form by the Commission, there was nothing in the contract other than the above-quoted passage that purported to bind the defendant. Just as the quoted passage misstated that the State of New York was a boxing club, it misstated that the State of New York was a party to the contract. The $10,000 contract was not signed by a representative of the defendant nor approved by the Attorney-General nor the Comptroller as required by State Finance Law § 112. Thus, the representations in the contract that the fight would be conducted in accordance with the Commission’s rules imposed duties and obligations upon the promoter and the decedent only, and in no way upon the defendant.
The fraud theory of liability, premised upon alleged misrepresentation in the contract that the boxing match would be conducted in conformity with the Commission’s rules, must also fail. The alleged misrepresentations were in actuality unfulfilled future promises of the promoter, and, thus, cannot result in liability being cast upon the defendant (Adams v Clark, 239 NY 403; Brown v Lockwood, 76 AD2d 721; 60 NY Jur 2d, Fraud and Deceit, § 11 et seq.).
The remaining intentional tort theories of liability (assault, battery and conspiracy) must likewise fail for insufficient proof. The court has not found one scintilla of evidence in the record that suggests that the Commission’s representatives were aware of Resto’s and Lewis’ criminal conduct prior to or during the fight. Accordingly, the defendant cannot be said to have participated in that conduct.
While the court has sympathy for claimants, their remedy lies not against the defendant, but rather, against Resto and his coconspirators. It was the criminal activity of those parties, and not the regulation of boxing by the defendant, that ended decedent’s career.
Based upon the foregoing, this claim must be, and hereby is, dismissed.