DECISION
This is an appeal of the April 11, 2001 decision of the Employees' Retirement System of Rhode Island (ERSRI), which denied the Appellant, Michael J. Clancy (Clancy) an accidental disability pension. The denial was issued by the ERSRI on April 11, 2001. Jurisdiction is pursuant to R.I.G.L. 1956 § 42-35-15 et seq.
 FACTS AND TRAVEL
Officer Clancy has been employed as a detective for the Warren Police Department since December 16, 1986 and participates in the police and fire fighters plan of the Municipal Employees' Retirement System administered by ERSRI. On January 29, 1998, Clancy experienced severe pain in his back and legs and was sent home from work. Clancy was later admitted to Rhode Island Hospital and diagnosed with a spinal epidural abscess. This abscess was treated surgically with a spinal decompression. The abscess was cultured and found to be related to a staphylococcal infection. As a result of the infection, Clancy was disabled and unable to perform his duties as a police officer for the Town of Warren.[1] Clancy was unable to determine the original source of the staphylococcal infection or whether he had contracted the infection while on duty as a police officer. The Town of Warren continued to pay Clancy his full salary and medical benefits pursuant to the injured-on-duty (IOD) statute applicable to police officers. See R.I.G.L. 1956 § 45-19-1.[2]
On October 23, 1998, Clancy applied to ERSRI for an accidental disability retirement pension pursuant to R.I.G.L. § 45-21.2-9. An accidental disability retirement is available to a police officer who demonstrates that his disability was caused by a work-related accident. An Ordinary disability retirement is available to police officers who are disabled but whose disabilities are not work related. See R.I.G.L. §45-21.2-8.
Clancy submitted a physician's report along with his application as required by § 45-21.2-9. The physician, Paul Agatiello, M.D., determined that Clancy was disabled and unable to perform is duties as a police officer. However, Dr. Agatiello found that the disability was not consistent with a work related accident. ERSRI then arranged for Clancy to be examined by three independent physicians pursuant to § 45-21.2-9. Two of the three doctors determined that Clancy's condition was not related to an accident while performing his duties as a police officer. The third doctor failed to include in his report whether or not the condition was related to Clancy's employment.
ERSRI denied Clancy's accidental disability application on February 10, 1999 based on the recommendation of the Disability Subcommittee (Subcommittee). Clancy appealed the decision of the Subcommittee and was granted a hearing before the Subcommittee on April 9, 1999. At this time, the Subcommittee allowed Clancy to submit further medical evidence in support of his application. After reviewing the new evidence, the Subcommittee reaffirmed its recommendation that Clancy's application be denied.
Clancy then appealed the decision of the Subcommittee to the full Retirement Board (Board) on April 11, 2001. The Board, after hearing testimony from Clancy, voted to affirm the decision of the Subcommittee. During this period, Clancy continued to receive his full pay and benefits from the Town of Warren (Warren). Subsequently, Warren motioned the Court to intervene as a co-appellant with Clancy. The Board opposed Warren's motion. The motion was granted on July 8, 2002. This instant appeal followed.
 STANDARD OF REVIEW
The review of the Department's decision by this Court is controlled by G.L. § 42-35-15(g) of the Administrative Procedures Act, which provides for review of contested agency decisions:
 "The Court shall not substitute its judgment for that of the agency agency as to the weight of the evidence on the questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing an agency decision, pursuant to § 42-35-15, the Superior Court sits as an appellate court with limited scope of review.Mine Safety Appliances v. Berry, 620 A.2d 1255, 1259 (R.I. 1993). The Superior Court is limited to "an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Johnston Ambulatory Surgical Associates, Ltd. v.Nolan, 755 A.2d 799, 805 (R.I. 2000) (quoting Barrington School Committeev. Rhode Island State Labor Relations Board, 608 A.2d 1126, 1138 (R.I. 1992)). If there is sufficient competent evidence in the record, the court must uphold the agency's decision. Id. at 805 (citing BarringtonSchool, 608 A.2d at 1138). A judicial officer may reverse the findings of the administrative agency only in instances where the conclusions and the findings of fact are "totally devoid of competent evidentiary support in the record" (Bunch v. Board of Review, 690 A.2d 335, 337 (R.I. 1997)); (Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981)), or from the reasonable inference that might be drawn from such evidence. Id. at 337 (quoting Guardino v. Department of SocialWelfare, 122 R.I. 583, 588-89, 410 A.2d 425, 428 (1980)). Additionally, questions of law are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts.Narragansett Wire Co. v. Norberg, 376 A.2d 1, 16 (R.I. 1977); Bunch, 690 A.2d at 337.
 STATUTORY INTERPRETATION
At threshold, the issue is whether Rhode Island Gen. Laws 1956 §23-28.36-4, a statute designed to compensate fire fighters and police officers who are exposed to infectious diseases while on the job, applies in cases involving accidental disability retirements. ERSRI argues that § 23-28.36-4 is not applicable in the instant case because §23-28.36-4 is designed to compensate police officers and fire fighters in a manner similar to workers' compensation, rather than accidental disability retirement. Clancy and Warren argue that the legislative intent of § 23-28.36-4 conveys two separate entitlements on a disabled police officer or fire fighter — the benefits of injured on duty (IOD) pay pursuant to § 45-21.2-1 and an accidental disability retirement under § 45-21.2-9. Thus, this case is a matter of statutory interpretation for this Court.
The first statute at issue, § 45-21.2-9, concerns retirement for an accidental disability by members of the Employees' Retirement System. Section 45-21.2-9 states in pertinent part:
 "Any member in active service, regardless of length of service, is entitled to an accidental disability retirement allowance. Application for the allowance is made by the member or on the member's behalf, stating that the member is physically or mentally incapacitated or further service as the result of an injury sustained while in the performance of duty certifying the time, place, and conditions of the duty performed by the member which resulted in the alleged disability. . . . If a medical examination made by three (3) physicians engaged by the retirement board, and other investigations as the board may make, confirms statements made by the member, the board may grant the member an accidental disability retirement allowance." (Emphasis added.)
The second statute at issue, § 23-28.36-4, concerns occupational disability for firefighters and states:
 "Any active fire fighter or police officer who is unable to perform his or her duties in his or her department by reasons of exposure to infectious disease as defined in § 23-28.36-2, which infectious disease develops or manifests itself as a result of exposure during a period while the fire fighter or police officer is in the service of the department, shall be entitled to receive an occupational disability, and he or she shall be entitled to all the benefits provided in chapter 19 of title 45, as applicable." (Emphasis added.)
ERSRI contends that the clear and unambiguous provisions of §45-21.2-9 — not § 23-28.36-4 — determines an employee's eligibility for an accidental disability retirement.[3] Clancy argues that § 23-28.36-4 should be harmonized with § 45-21.2-9 to create an accidental disability retirement with a presumption that any infectious disease contracted during an officer's employment was contracted while on duty.[4]
The task of this Court in construing a statute is to "establish and effectuate the intent of the Legislature." Wayne Distribution Co. v.Rhode Island Commission For Human Rights, 673 A.2d 457, 460 (R.I. 1996) (quoting Rhode Island State Labor Relations Board v. Valley Falls FireDistrict, 505 A.2d 1170, 1171 (R.I. 1986)). The intent of the legislature is determined "by examining the language, the nature, and the object of the statute while giving its words their plain and ordinary meaning." C J Jewelry Co., Inc. v. Department of Employment and Training Boardof Review, 702 A.2d 384, 385 (R.I. 1997). "It is well settled that when the language of a statute is plain and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." Providence Worcester R. Co. v.Pine, 729 A.2d 202, 208 (R.I. 1999) (quoting Accent Store Design, Inc.v. Marathon House, Inc., 674 A.2d 1223, 1226 (R.I. 1996)). If the statutory provisions are unclear and ambiguous, this Court must examine the statutes in their entirety in order to "glean the intent and purpose of the Legislature." Id. (citations omitted).
 SECTION 45-21.2-9
Applying this standard of statutory interpretation, this Court must determine the plain and ordinary meaning of the language found in §45-21.2-9 and accord the language its plain and ordinary meaning. After a reading of § 45-21.2-9, this Court finds that the plain and ordinary meaning of § 45-21.2-9 does not confer a presumption that infectious diseases apply to accidental disability retirements without satisfying the criteria set forth in § 45-21.2-9. Clancy's argument that an infectious disease presumption applies to § 45-21.2-9 must fail for several reasons.
First, 45-21.2-9 clearly states that in order for members to qualify for an accidental disability retirement pension they must certify the time, place, and conditions under which the disability occurred. Conversely, the infectious disease statute, § 23-28.36-1, confers a presumption that any infectious disease that a police officer contracts while on duty is a result of the officer's duties without certifying any conditions. The ordinary meanings of "time," "place", and "conditions" found in Section § 45-21.2-9 are self-evident to this Court. It is clear from a plain reading of § 45-21.2-9 that the Legislature intended for an employee, who applies for an accidental disability retirement, to identify these three elements as conditions precedent to qualifying for an accidental disability retirement.
In addition, the plain language of section § 45-21.2-9, the municipal employees' retirement statute, makes no reference to the infectious disease statute (§ 23-28.36-4). This is not an oversight on the part of the General Assembly because § 45-21.2-9 does provide for another occupational disease (occupational cancer). See §45-21.2-9(b)(c). This Court notes that if it was the intent of the Legislature to make an exception for infectious diseases, they could have referenced the infectious disease statute — § 23-28.36-4
— or expressly provided for all infectious diseases in §45-21.2-9. See Ganim v. Roberts, 204 Conn. 760, 763, 529 A.2d 194 (1987) (the court is constrained to read a statute as written); InternationalBusiness Machines Corporation v. Brown, 167 Conn. 123, 134, 355 A.2d 236
(1974) (the court may not read into clearly expressed legislation provisions which do not find expression in its words).
Moreover, it is clear that the Legislature did not intend to confer a presumption that the infectious disease occurred in the line of duty because § 45-21.2-9 requires three independent physicians to certify that the disability occurred as a result of a specific identifiable event. Without this certification, the employee is unable to qualify for an accidental disability retirement pension.[5] Section 23-28.36-1 of the infectious disease statute, confers a presumption that the disease occurred in the line of duty without any such certification from any physician. This Court cannot ignore the certification requirements of § 45-21.2-9 when gleaning the intent of the Legislature.
Accordingly, the Board's finding that the intent of the Legislature was to provide one set of conditions for workman's compensation claims and another for accidental disability retirement is not in violation of constitutional or statutory provisions or made upon unlawful procedure or clearly erroneous in view of the reliable, probative and substantial evidence on the whole record or affected by error of law.
 SECTION 23-28.36-4
The Board, in its decision of April 11, 2001, (Finding of Fact # 6), determined that R.I.G.L. § 23-28.36 is used in connection with a municipality's obligation to compensate their police/fire employees for work-related injuries similar to worker's compensation, not the receipt of an accidental disability pension. Clancy contends that the inclusion of the phrase, ". . . and he or she shall be entitled to all the benefits provided in chapter 19 of title 45, as applicable," in § 23-28.36-4, to mean that a member who qualifies for an occupational disability under § 23-28.36-4 also qualifies for an accidental disability retirement under § 45-21.2-9. Clancy's interpretation of § 23-28.36-4 is unpersuasive for several reasons.
First, the plain language of § 23-28.36-4 confers the same benefits on a disabled employee, such as tuition to children of disabled police officers, which are found in chapter 19 of title 45, not the entire statute itself. Secondly, assuming arguendo, that § 23-28.36-4 does confer the entire provisions of chapter 19 of title 45 on police officers who contract an infectious disease, it would not further Clancy's argument because chapter 19 provides relief for injured and deceased fire fighters and police officers while employed, not retirement benefits.
Our Supreme Court has spoken on the applicability of § 45-19-1 to retirement benefits and held that [W]e now hold in clear and unambiguous language that § 45-19-1 is not a retirement act." See Webster v.Perrotta, 774 A.2d 68, 80 (2001). In addition, our Supreme Court inLabbadia declared that, "§ 45-19-1 is a substitute for worker's compensation and affords a greater protection to injured police officers . . . and was intended by the Legislature to provide greater benefits to these public employees." See Labbadia v. State, 513 A.2d 18, 20 (R.I. 1986). This Court finds that it was the intent of the legislature in enacting § 45-19-1 to create a unique type of workman's compensation for police and fire fighters injured on duty, not create a new retirement system.
Additionally, an occupational disability may be temporary and is administered by the municipality in much the same way as workman's compensation while an accidental disability retirement qualifies the recipient to an annuity for life. See § 45-21.2. Therefore, it follows that the legislature created a higher standard for qualifying for an accidental disability (an identifiable incident and three certifying physicians) than for a workman's compensation claim. There is no indication from the plain language of § 23-28.36-4 that the Legislature intended to convey an automatic accidental disability retirement to a police officer who contracts an infectious disease without the requirements set forth in § 45-21.2.-9. This Court is mindful that our Supreme Court has held that the General Assembly has entrusted ERSRI with the authority, pursuant to § 36-8-3, to operate and administer the state retirement system. See Perrotti v. Solomon,657 A.2d 1045, 1048.[6] In addition, the Rhode Island Supreme Court has found that, "[T]he law in Rhode Island is well settled that an administrative agency will be accorded great deference in interpreting a statute whose administration and enforcement have been entrusted to the agency." State v. David Cluley, 808 A.2d 1098, 1103 (R.I. 2002) (quotingIn re Lallo, 768 A.2d 921, 926 (R.I. 2001)). The Board's interpretation of the statute as granting ERSRI discretion to determine that §45-21.2-9 as the only applicable statute concerning accidental disability retirement is consistent with the text of the statute and the intent of the legislature.
Accordingly, this Court finds that the decision of the Board was not in violation of constitutional or statutory provisions. The Board's finding that the plain and unambiguous language of § 23-28.36-4 does not confer an accidental disability retirement pension on a police officer who is disabled from exposure to an infectious disease while in the line of duty without satisfying the requirements of § 45-21.2-9 is not affected by error of law.
 HARMONIZING § 45-21.2-9 AND § 23-28.36-4
Clancy also argues that the legislature intended § 23-28.36-4 to be harmonized with § 45-21.2-9 because § 23-28.36-4 provides that a police officer who qualifies under § 23-28.36-4 is entitled to the same benefits provided in chapter 19 of title 45 as discussed supra.
ERSRI responds that this provision does not require a harmonization of the two statutes, but only confers the same benefits found in title 45 — such as payments to dependents of deceased police officers and tuition payments to children of deceased police officers — to police officers who qualify for benefits under § 23-28.36-4.
It is well settled that "[i]n construing the provisions of statutes that relate to the same or to similar subject matter, the court should attempt to harmonize each statute with the other so as to be consistent with their general objective scope." Kaya v. Partington, 681 A.2d 256, 261 (R.I. 1996). The Supreme Court will give the enactment "what appears to be the meaning that is most consistent with its policy or obvious purposes." Kirby v. Planning Board of Review of Middletown, 634 A.2d 285, 290 (R.I. 1993) (quoting Zannelli v. DiSandro, 84 R.I. 76, 81,121 A.2d 652, 655 (1956)). Furthermore, when confronted with multiple statutes, "it is this [C]ourt's responsibility in interpreting [the] legislative enactment[s] to determine and effectuate the Legislature's intent and to attribute to the enactment[s] the meaning most consistent with [their] policies or obvious purposes." Carol B. Folan v. State ofRhode Island, 723 A.2d 287 (R.I. 1999) (citing Brennan v. Kirby,529 A.2d 633, 637 (R.I. 1987)). Statutes which relate to the same subject matter should be considered together so that they will harmonize with each other and be consistent. Id.
In the instant matter, the two statutes need not be harmonized because they relate to different subject matter. Section § 45-21.2-9 relates to retirement pensions and § 23-28.36-4 relates to injured-on-duty benefits. The intent of the legislature in each instance would be frustrated by construing the statutes as create an accidental disability retirement pension with a presumption that an infectious disease occurred in the line of duty.
 CONCLUSION
After review of the entire record, this Court finds that the Decision by the Retirement Board was not in violation of constitutional or statutory provisions, was not in excess of the statutory authority of the agency, was not clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record and was made upon lawful procedure. The Retirement Board's actions were not arbitrary or capricious or characterized by an abuse of discretion and not affected by other error of law. Accordingly, the plaintiff's appeal is denied, and the decision of the Employees' Retirement Board of Rhode Island is hereby affirmed.
Counsel shall prepare the appropriate judgment for entry.
[1] There is no dispute that Clancy is permanently disabled and unable to perform his duties as a police officer.
[2] On December 1, 2000, the Town of Warren informed Clancy that it planned to stop paying his salary at the end of that month. Clancy filed suit against the Town of Warren to enjoin it from stopping his salary based on the Town's obligation to continue paying him under § 45-19-1, (the injured-on-duty statute).
[3] The April 11, 2001 decision of the Board found that, "[A]ccidental Disability Pension applications for Policemen and Firemen are governed by R.I.G.L. § 45-21.2-9, not R.I.G.L. § 23-28.36. See decision of ERSRI, Finding of Fact # 5.
[4] This presumption is found in § 23-28.36-1, which states in pertinent part: "The general assembly finds and declares that by reason of their employment, firefighters, police officers, and emergency medical technicians are required to work in the midst of, and are subject to exposure to infectious diseases . . . and declares that all the aforementioned conditions exist and arise out of or in the course of employment."
[5] This Court notes that the Retirement Board suggested that Clancy could qualify for an ordinary disability retirement pension pursuant to § 45-21-2-7. The primary effect on Clancy of taking an ordinary
disability retirement rather than an accidental disability retirement is that an accidental disability retirement is tax-free.
[6] R.I.G.L. 1956 § 36-8-3 states in pertinent part, "[T]he general administration and the responsibility for the proper operation of the retirement system and for the making of effective provisions of chapter 8 — 10 of this title are hereby vested in the retirement board. . . ."